In the Matter of WESTEC CORPORATION, Debtor.

**FLORIDA INSTITUTE OF TECHNOLOGY, Plaintiff-Appellant,**

v.

**Orville S. CARPENTER, Trustee of Westec Corporation, Debtor, Defendant-Appellee.**

No. 71–3020.

United States Court of Appeals, Fifth Circuit.

May 30, 1972.

Joel P. Kay, of Sheinfeld, Maley & Kay, Houston, Tex., G. William Hedman, Melbourne, Fla., E. D. Cossaboom, Jr. of Hedman & Lawrence, Melbourne, Fla., for plaintiff-appellant.

Clinton F. Morse, Raymond A. Cook, Andrews, Kurth, Campbell & Jones, Houston, Tex., for defendant-appellee.

Before AINSWORTH, GODBOLD and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The thorny and persistent question of the existence or nonexistence of summary jurisdiction confronts us once again in this case, this time in relation to the extent of a reorganization court's authority to exercise complete and total control over all property of the debtor, wherever located, whether or not requisite notice has been given concerning the pendency of such proceedings under Chapter X of the Bankruptcy Act.

██ This case comes to us from the Southern District of Texas and specifically involves the long-drawn out and many faceted reorganization of Westec Corporation. The court below held that pursuant to the authority granted it by specific provisions of the Bankruptcy Act, it had summary jurisdiction to determine or affect the ownership interest or rights of third parties in Florida real estate as to which the Chapter X trustee claims a mortgage lien. We agree, and affirm the decision of the district court.

On May 7, 1971, the trustee for Westec Corporation, a debtor in a Chapter X reorganization proceeding, filed an application with the lower court for a determination as to the validity of the trustee's mortgage interest on certain real estate in Brevard County, Florida, and for an order to show cause why Florida Institute of Technology (hereinafter referred to as the School) and others should not be held in contempt of court for violating the initial restraining order of September 27, 1966. The order to show cause issued on May 7, 1971, and service of the application and order was made on the School by U. S. Mail.

The School thereafter filed a motion to vacate the order and to dismiss the trustee's application on the basis that the lower court did not have summary jurisdiction to grant the relief applied for by the trustee. On July 2, 1971, the district court held a hearing on the School's motion and received testimony and evidence on the entire matter. On August 18, 1971, the lower court issued its order and findings of fact and conclusions of law decreeing that the court had summary jurisdiction and that the trustee holds a valid first mortgage on the School's real estate. It is from this order that this appeal is taken.

Westec Corporation filed its petition for the reorganization of its corporation on September 26, 1966, and the lower court on said date issued a restraining order enjoining creditors of the corporation and others from proceeding against the corporation, its property and the trustee. At the time the petition was filed, the corporation was the owner and holder of a promissory note from Donald McGregor, and said note was secured by a second mortgage interest on Lots Four (4), Five (5), Six (6), and Sixteen (16), Feast Grove, Brevard County, Florida. McGregor's property was at the time already encumbered by a first mortgage in favor of Soroban Engineering, Inc., a Florida corporation.

At the time the Chapter X proceeding was filed, the property was being rented from Donald McGregor by Geo Space Systems, Inc., one of the debtor's subsidiaries. In July of 1967, Geo Space vacated the property and on or about September 1, 1967, McGregor leased the property to another corporation unconnected with Westec or the trustee.

A week prior thereto, on August 22, 1967, Soroban Engineering instituted suit in the Circuit Court of the Eighteenth Judicial Circuit of Florida, in and for Brevard County, seeking to foreclose its first mortgage on the property. Westec was made a party to the suit since it held the second mortgage on the property. After judgment of foreclosure had already been entered, Westec moved to set aside the judgment on the basis of the bankruptcy court's restraining order. On January 17, 1968, the Brevard County Circuit Court vacated the judgment, reinstated the Westec mortgage, and Westec then took an assignment of the Soroban mortgage. Westec thereafter held both the first and second mortgage interest on said property. However, a copy of the bankruptcy court's restraining order was never recorded in the public records of Brevard County.

On October 16, 1968, the Melbourne-Tillman Drainage District, a public draining corporation, instituted suit in the Circuit Court of the Eighteenth Judicial Circuit of Florida, in and for Brevard County, seeking to foreclose its liens on property within the district for unpaid drainage taxes for the years 1966 and 1967. Among the properties listed in this suit were Lots Four (4), Five (5), and Sixteen (16) of Feast Grove, but not Lot Six (6). The drainage taxes due on said lots were in the amount of $4.50 for the year 1967.

As required by the laws of the State of Florida, due notice of suit was published in a newspaper of general circulation in the county, and a copy of the notice was furnished to the record owner, Donald McGregor, by U. S. Mail. On December 9, 1968, the circuit court judge entered a final judgment requiring the payment of $18.84 on Lots Four (4), Five (5), and Sixteen (16) Feast Grove, for delinquent taxes, interest and costs, and in default of the payment within fifteen (15) days, ordered the special master to advertise and sell the properties at public sale, subject to their being redeemed within twelve months from the sale date. After due publication, on February 19, 1969, the special master sold the property to Cecil Platt for the bid price of $20.00, subject to the one-year redemption period.

On March 12, 1970, the circuit court entered an order confirming the sale, and the special master issued his certificate of title to said property to Cecil Platt.

During the month of April, 1969, the debtor corporation forwarded to the Tax Collector of Brevard County a check for payment of the drainage district taxes. On May 8, 1969, the drainage district advised Westec of the foreclosure and that Lots Four (4), Five (5), and Sixteen (16) Feast Grove could be redeemed by paying $26.46 to the Clerk of the Circuit Court in Brevard County with a letter describing the property to be redeemed and the foreclosure number.

On May 27, 1969, Westec mailed its check and letter to the clerk of the circuit court for the purpose of redeeming the property, requesting that the clerk advise Westec as soon as the property was redeemed.

On April 8, 1971, Cecil Platt and his wife conveyed Lots Four (4), Five (5), and Sixteen (16) Feast Grove to Florida Institute of Technology for the sum of $3,500.00, the balance of the fair value of the property being a charitable donation.

Florida Institute of Technology, being in need of the facility for its medical research institute, learned that Cecil Platt owned the McGregor property, and the president of the School contacted Mr. Platt on its use. Mr. Platt agreed to convey the land to the School as a donation with a payment to him of $3,500.00 for his expenses, and several days later the School received their deed and paid the sum required. There was no examination of title nor did the School have any knowledge of the reorganization proceeding. Upon receiving title, the School repaired and restored the premises and is now operating their medical research institute at this facility.

We shall not undertake here a long discussion and treatment of the subject of summary jurisdiction of the bankruptcy court, a topic about which much has been written. In any event, we are here concerned with a much broader statute than that which controls straight bankruptcy proceedings, namely, Sections 111 [1] and 148 [2] of the Bankruptcy Act, which give Chapter X courts not only exclusive control over all property of the debtor wherever located, but also establishes an automatic stay *without notice* of any pending proceeding and the commencement of any future proceeding to enforce a lien against the debtor's property *until further order of the court in the reorganization proceeding.*

This may seem to be a harsh rule, but the necessity thereof is readily apparent when one considers the unlikely success of any major reorganization effort when any one of a myriad of state courts can divest the debtor of property. This is simply a matter of federal pre-emption by the nature of Chapter X, and in particular, of Section 148, which requires consent of the reorganization court for a change in the permeating injunction it has already issued. As was held by the Third Circuit in the recent case of In Re: Imperial "400" National, Inc., 429 F.2d 671 (1970):

> In order to effectuate the purpose of Chapter X proceedings—"to render the authority and control of the reorganization tribunal paramount and all-embracing to the extent required to achieve the ends contemplated by Chapter X; and to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the progress of reorganization", [6 Collier on Bankruptcy, ¶ 3.03, page 424, (14th Ed.)]—tradi-

1. Section 111 (11 U.S.C.A. Sec. 511) of the Bankruptcy Act:
 Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located.

2. Section 148 (11 U.S.C.A. Sec. 548) of the Bankruptcy Act:
 Until otherwise ordered by the judge, an order approving a petition shall operate as a stay of a prior pending bankruptcy, mortgage foreclosure, or equity receiver proceeding, and any act or other proceeding to enforce a lien against the debtor's property.

tional concepts of property, title and separate entities may have to give way.

Certainly, courts should favor the reorganization trustee's rights vis-a-vis the local taxing statutes which purport to cut off rights as a result of unpaid taxes—and this must be done regardless of notice of the pendency of the Chapter X having been specifically given to the taxing authorities.

■ The trustee here, at the time of the foreclosure, held the first and second mortgage on the real estate in question. Certainly, this interest constitutes "property" within the meaning of Sections 111 and 148 of the Bankruptcy Act, as "property" can constitute something other than fee ownership. Texas Company v. Hauptman (9 Cir. 1937), 91 F.2d 449.[3] The principal case cited by appellant involves the situation of moving the reorganization court for the dissolving of its general stay order against interference with the property of the debtor as there was no equity for debtor in the subject property, it holding only a third mortgage. As appellee points out, the moving consideration in the court's decision to release the property was the insignificance of the debtor's third mortgage, and not that the third mortgage did not constitute property. In the Matter of Copper Canyon Mining Company (D.C.Del.1957), 156 F.Supp. 535.

■ In our present case, there would now be no issue had the taxing authorities sought leave of the reorganization court to foreclose and such permission been granted. Certainly, because of prior dealings with the Chapter X trustee, Florida authorities were aware of the Chapter X pending in the Southern District of Texas. We believe that this knowledge required them to go further and inform the trustee of these foreclosure proceedings, but most importantly, to seek a lifting of the Chapter X court's restraining order so that these

foreclosure proceedings could take place. Since they did not follow this practice, the tax foreclosure proceedings and the deed issued to Platt pursuant thereto was and is a nullity insofar as the trustee's rights herein are concerned.

■ The appellant makes much of the dereliction of the trustee in his failing to petition the circuit court to redeem the property within one year from the foreclosure sale, even though he mailed a check in the required amount of $26.46 to the Clerk of the Circuit Court in Brevard County, asking to be advised when the property had been redeemed. While it would have been better practice for the trustee to then proceed according to Florida law in accomplishing redemption of the property, the technicalities of state law simply cannot take precedence over the restraining order issued by the Chapter X court.

The trustee paid the taxes on May 27, 1969. On April 8, 1971, almost two years later, Platt (who had bid the property in for the bid price of $20.00) quitclaimed the property to the Florida Institute of Technology for $3,500.00. No title examination was run by Florida Institute of Technology, which examination would have quickly disclosed the $210,000.00 first and second mortgage interest of the trustee. We have two observations to make along this line.

First of all, a quit-claim deed creates a caveat emptor situation; the appellant could only take such title as Platt possessed under his tax deed. We cannot conceive of a grantee taking such a piece of property, obviously worth considerably more than the $3,500.00 purchase price, proceeding then to put further improvements on the property, without insisting on a searching examination of the title.

Secondly, this court is disposed to characterize as unconscionable any holding which would have the effect of denying to the debtor a piece of property in

---

3. Grappling with the word "property", the Supreme Court recognized in Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), that its meaning in the Bankruptcy Statute does not depend on traditional concepts.

which it had a property interest of nearly a quarter of a million dollars in order to recognize the validity of a tax foreclosure by a water district for the amount of $20.00. The reorganization court being a court of equity,[4] it cannot sanction such a result as this, particularly in view of the fact that a title examination clearly would have shown a duly recorded bona fide first and second mortgage.

Suffice it to say that the interest of the trustee must follow the property. The effect of the water district tax foreclosure proceeding on the trustee's mortgage interest in the subject land could be, and properly was, determined by the reorganization court in the exercise of its summary jurisdiction. We believe it correctly found that the trustee's mortgage interest was unaffected thereby.

For the reasons above set forth, we hold that the district court had jurisdiction to determine that the mortgage interest held by the trustee in the McGregor land was unaffected by the water district tax foreclosure proceeding.

The decision of the district court is Affirmed.

4. Reorganization in bankruptcy stems from the old reorganization in equity. Bankruptcy Act, Sec. 101 et seq., 11 U.S.C.A. Sec. 501 et seq. Central States Electric Corporation v. Austrian, 4 Cir. 1950, 183 F.2d 879, cert. den. 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662.