**In re RELATED ASBESTOS CASES.**

Nos. C–79–3588, C–81–2702, C–81–3871, C–81–2693 and C–81–3843.

United States District Court, N. D. California.

Sept. 14, 1982.

Order Sept. 23, 1982.

Kenneth W. Carlson, Burke W. Bradley, John Gigounas, Law Offices of Kenneth W. Carlson, Oakland, Cal., Gerald C. Sterns,

Law Offices of Gerald C. Sterns, San Francisco, Cal., for plaintiffs.

Norman B. Hendricks, Law Offices of Norman B. Hendricks, Berkeley, Cal., for plaintiff Deanne J. Snyder.

Arthur Jay Moore, Moore, Clifford, Wolfe, Larson & Trutner, Oakland, Cal., for defendant Johns-Manville Corp.

Charles Negley, Douglas G. Wah, Maloney, Chase, Fisher & Hurst, San Francisco, Cal., for defendant Raybestos-Manhattan, Inc.

Frank E. Bondonno, Popelka, Allard, McCowan & Jones, San Jose, Cal., for defendant Owens-Corning Fiberglas Corp.

Ronald E. Hothem, San Francisco, Cal., for defendant Fibreboard Corp.

Berry & Berry, Oakland, Cal., for defendant Celotex Corp.

Winningham, Roberts & Rogie, San Francisco, Cal., for defendant Eagle-Picher Industries, Inc.

Gary T. Drummond, Stevens & Drummond, Walnut Creek, Cal., Haims, MacGowan & McInerney, Oakland, Cal., for Amatex Corp.

Charles W. LaGrave, Law Offices of William J. Duke, San Francisco, Cal., for defendant H. K. Porter Inc.

Law Offices of Hassard, Bonnington, Rogers & Huber, San Francisco, Cal., for defendant Pittsburgh Corning Corp.

Wilkes R. Morgan, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant Unarco Industries, Inc.

Lawrence E. Mullally, Oakland, Cal., for defendant Keene Corp.

Gudmundson, Siggins & Stone, San Francisco, Cal., for defendant Armstrong Cork Co.

McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant GAF Corp.

Law Offices of William I. Duke, San Francisco, Cal., for defendant Southern Textile & Thermoid.

Robert A. Ford, Case & Ford, San Francisco, Cal., for defendant Combustion Engineering, Inc.

Morgenstein, Ladd & Jubelirer, San Francisco, Cal., for defendant Owens-Illinois, Inc.

St. Clair, Zappettini, McFetridge & Griffin, San Francisco, Cal., for defendant Nicolet, Inc.

Albert B. Norris, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant Southern Pacific Trans. Co.

Stuart M. Gordon, Gordon & Rees, San Francisco, Cal., for defendant The Bendix Corp.

Harold Cohn, O'Connor, Cohn, Dillon & Barr, James L. English, San Francisco, Cal., Douglas L. Field, Taylor & Field, Oakland, Cal., Frederick Bradley, Mead, Bradley & Keenan, San Francisco, Cal., W. Conrad Hoskins, Bianchi, Hoskins & Rosenberg, San Rafael, Cal., for defendant Ryder Industries, Inc.

James R. Busselle, Ream, Train, Horning, Ellison & Roskoph, Palo Alto, Cal., for defendant Wagner Elec. Corp.

Patrick H. Fabian, Sullivan, Roche & Johnson, San Francisco, Cal., for defendant Abex Corp.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, San Francisco, Cal., for cross-defendant Thiokol Corp.

Law Offices of Glenn P. Lewis, Lafayette, Cal., for cross-defendant Carlisle Corp.

George W. Ball, Low, Ball & Lynch, San Francisco, Cal., for cross-defendant American Motors.

James J. Marchiano, Crosby, Heafey, Roach & May, Oakland, Cal., for cross-defendant Chrysler Corp.

Thompson, Mayhew & Michel, Sacramento, Cal., for cross-defendant Worldbestos.

## ORDER

PECKHAM, Chief Judge.

### I.

Across the country, thousands of asbestos-related personal injury actions are pending. Plaintiffs therein contend that their injuries have been caused by asbestos products, allegedly manufactured, sold or distributed by the numerous codefendants. Unarco Industries, Inc., and Johns-Manville Corporation are two such codefendants. Unarco alone is a defendant in an estimated 14,000 actions nationwide. Johns-Manville is the largest manufacturer of asbestos products amongst the codefendants. Johns-Manville and Unarco are codefendants in approximately 70 actions in this court. Both Unarco and Johns-Manville have had brought against them by other codefendants, and have themselves filed, various cross-claims seeking indemnity and contribution.

On July 29, 1982, Unarco and its affiliated companies filed a petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1101 *et seq.*, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. On August 26, 1982, defendant Johns-Manville and its affiliated companies similarly filed a Chapter 11 petition in the Southern District of New York. These events have created a state of confusion throughout the country in regard to pending asbestos litigation and settlement proceedings; all parties desire a clarification concerning the extent to which the automatic stay provision of 11 U.S.C. § 362 affects the course of existing asbestos litigation in this court. Section 362(a)(1) reads:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of

> (1) The commencement or continuance, including issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this Title, or to recover a claim against the debtor that arose before the commencement of the case under this Title;

After having received extensive briefing from all parties, the court now addresses the following issues:

1) whether claims against Unarco and Johns-Manville may be severed and plaintiffs' claims against other codefendants continue unabated;

2) whether cross-claims brought by non-bankrupt codefendants against Unarco and Johns-Manville may likewise be severed and stayed;

3) whether this court must obtain Bankruptcy Court approval of such severance orders.

### II.

At the outset, defendants concede that the court continues to have jurisdiction over the cases. The automatic stay provision merely suspends those proceedings to which it applies and does not divest the court of jurisdiction. *David v. Hooker, Ltd.,* 560 F.2d 412, 418 (9th Cir. 1977); *Paden v. Union for Experimenting Colleges and Universities,* 7 B.R. 289, 290–91 (Bkrtcy.N.D.Ill.1980). Furthermore, the maintenance of a bankruptcy proceeding does "not divest other courts of jurisdiction over lawsuits involving the bankrupt," *Duncan v. Royal Tops Manufacturing Co.,* 381 F.2d 879, 882 (7th Cir. 1967), although such proceedings may be subject to the stay provisions. Defendants do contend, however, that this court lacks jurisdiction to construe section 362. We disagree. Despite the broad jurisdiction conferred upon the bankruptcy courts by section 1471 of Title 28 [1], that jurisdiction does not necessarily include the exclusive power to determine the scope of section 362. Instead, this court concludes that it possesses jurisdiction independently to construe the meaning of that section without the concurrence of the bankruptcy court.

The only case relied upon by defendants, *In re Coleman American Companies,* 8 B.R. 384 (Bkrtcy.D.Kan.1981), is not to the contrary. The debtor therein had filed a chapter 11 petition in the Bankruptcy Court for the District of Kansas. A secured creditor holding a senior lien on property of the debtor in Colorado filed a complaint for relief from the stay provisions of section 362 to foreclose the property in the Bankruptcy Court for the District of Colorado. No relief was sought from the Kansas bankruptcy court. The Kansas court held the creditor in contempt for violating the provisions of section 362. This case is distinguishable. It focuses upon an action to lift a legitimate stay whose proper scope was not at issue. The court analogized the stay provision to an injunction, remarking that an action to stay "has no life of its own independent of the primary proceeding from which it flows and but for that primary proceeding could not be filed anywhere." *Id.* at 388. The court emphasized that "courts of equal rank may not vacate one another's stay or injunction." *Id.* at 389. Such reasoning may be appropriate when applied in the context of a request for relief from a stay; the original bankruptcy courts alone should have exclusive power to lift an actual stay under section 362. A contrary conclusion would contravene the intention of Congress to centralize litigation concerning the bankrupt's affairs in a single forum.

---

1.     (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

    (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

    (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

    (d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

    (e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

Neither *Coleman* nor the cases cited therein [2] are relevant to the instant issue— the proper scope of the stay. All involved proceedings which would have directly affected the property of the bankrupt and which, if allowed to continue by another court, would truly have had a disintegrative impact on the primary reorganization action. Under such circumstances, it is reasonable to require parties to seek relief from the court in which all actions actually affecting the bankrupt are to be centralized. The present actions, if claims against Unarco and Johns-Manville are severed therefrom, do not directly affect the bankrupt.

Applying the well-settled principle that a court has jurisdiction to decide its own jurisdiction, that is, to determine whether it has jurisdiction over the parties to, and subject matter of, a suit (*see United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); C. Wright, *Federal Courts* 57–62 (3d ed. 1976)), we conclude that this court has jurisdiction to examine the automatic stay provision and that it does not operate to suspend actions against codefendants and cross-claims between non-bankrupt codefendants.

### III.

The plain language of section 362, *supra,* clearly and repeatedly refers to actions against the debtor; it nowhere purports to encompass other related interparty claims. Such a literal reading of the statutory language is consistent with the purposes of an automatic stay, as described by the court in *Paden, supra,* 7 B.R. at 290 (describing Rule 11–44 of the 1898 Act):

**2.** The first case, *In re Delta Food Processing Corp.,* 446 F.2d 437 (5th Cir. 1971), merely held that the Economic Development Administration and its agent, Small Business Administration, could be enjoined by the bankruptcy court from enforcing a lien they possessed on the debtor/bankrupt's property. The second, *In re Westec Corp.,* 460 F.2d 1139 (5th Cir. 1972), held that the bankruptcy court had summary jurisdiction to determine or affect ownership interests or rights of third parties in property in

to prevent the dissipation or diminution of the bankrupt's assets during the pendency of the Chapter XI proceeding ... and to avoid the multiplicity of claims in different forums against the estate.

■ The legislative history of the 1978 Act does not belie this reading of the statute and, in fact, by its silence, further supports such an interpretation. That history, while emphasizing the broad nature of the stay provision, does not delineate the specific scope. *See* H.R.Rep.No. 95–595, 95th Cong., 2nd Sess. 340 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. It nowhere implies that the stay applies to actions against non-bankrupts, as well as the bankrupt, in a single proceeding, although the provision does detail carefully seven categories of proceedings against the debtor which are stayed. The legislative history notes that the stay protects creditors from the injustice of a race for the debtor's assets;

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep.No. 95–595, 95th Cong., 2d Sess. 340 (1978), U.S.Code Cong. & Admin.News 1978, 6297. *And* it serves to protect the debtor:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It

which a bankruptcy trustee claimed a mortgage lien. *Westec* emphasized that a reorganization effort could not be successful if "any of a myriad of state courts could divest the debtor of property," *id.* at 1142, by, *e.g.,* foreclosure proceedings. A local taxing authority, the court noted, was required to seek a lifting of the restraining order from the bankruptcy court in order to proceed with a foreclosure action.

stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S.Rep.No. 95–989, 95th Cong., 2d Sess. 54–55 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840–5841. These purposes would not be contravened by a construction of section 362 which permitted claims and cross-claims against the bankrupts to be severed from an ongoing proceeding and which allowed claims against remaining co-defendants to continue. Neither the bankrupts' estates nor their creditors would be adversely affected thereby.

Defendants assert that section 362 operates as an automatic moratorium on all actions in which the bankrupts are parties, mandating cessation of all activity in those cases. In support of their position, defendants also refer to the "plain" language of the statute, particularly its reference to "all entities." Indeed, in *Clutter v. Johns-Manville et al.*, No. C–78–1229 (N.D.Ohio August 2, 1982), the district judge did construe this language expansively, as "persuasive, universally, thoroughly exhaustive of all possible parties who may be involved in the litigation on file in [the] court." (Transcript at 7). We are not persuaded. We suggest, instead, that the definitional phrase, "all entities," was intended merely to identify those categories of parties who, when moving against the bankrupt, are covered by the provision.

Moreover, section 362(d), which allows a party to request relief from the automatic stay, can not accurately be characterized as an "escape valve" which complements, mitigates, and, therefore, contemplates, as defendants contend, a plenary stay. That subsection reads:

(d) On request of a party in interest and after notice and a hearing, the court shall grant leave from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) For cause, including the lack of adequate protection of interest in property of such party in interest;

This provision merely permits the stay to be lifted when a party would otherwise be particularly prejudiced by its continuation. The mere existence of section 362(d) does not suggest that the actual scope of the automatic stay is as far-reaching as defendants aver.

Numerous cases support our conclusion that the section 362 stay does not preclude severance. In *Royal Truck and Trailer v. Armadora Maritima Salvadorena*, 10 B.R. 488 (D.C.N.D.Ill.1981), the plaintiff had asserted breach of a lease agreement and sought recovery against the bankrupt and a codefendant as joint obligors thereof. The court focused upon the language and purpose of the stay provision, which "makes it quite clear that, in Chapter 11, the protections afforded the bankrupt are designed for the debtor-bankrupt only." *Id.* at 490, citing the previously discussed legislative history. Furthermore, the court compared Chapter 13 with Chapter 11, remarking that under Chapter 13, unlike Chapter 11, Congress had provided protection for a co-debtor in the form of a stay unless the co-debtor became liable in the ordinary course of his business, 11 U.S.C. § 1301(a); yet Congress has failed to provide such a broad stay under Chapter 11. Judge Roszkowski concluded:

In this court's opinion, Congress' decision to specifically provide for stays against co-debtors under the New Code's Chapter 13 provisions and Congress' apparent decision to not provide for similar relief under Chapter 11 lends further support to this court's conclusion that the automatic stay provisions in § 362(a) operated in favor of the bankrupt . . . only and not in favor of a co-debtor. . . .

Consequently, in this court's opinion, something more than the mere fact that one of the parties to this lawsuit has filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against non-bankrupt parties.

See, e.g., *Teledyne Industries, Inc. v. Eon Corp., supra,* 401 F.Supp. [729] at 734. *Id.* at 491.

✔ Other cases are in accord. In *In re Aboussie Brothers Construction Co.,* 8 B.R. 302 (D.C.E.D.Mo.1981), the United States District Court for the Eastern District of Missouri affirmed the bankruptcy court's refusal to enjoin the plaintiff from continuing with its suit in state court against the individual partners of a bankrupt partnership after the filing of the Chapter 11 petition stayed the action against the partnership, despite the fact that suit might impair the partners' ability to contribute funds to the reorganization of the debtor.

✔ In *GMAC v. Yates Motor Co.,* 159 Ga. App. 215, 283 S.E.2d 74 (1981), an action by a truck dealer against the president of the bankrupt second dealer and automobile financing corporation for conversion, the court analyzed extensively the scope of section 362 in the context of a suit against joint tortfeasors, such as is presented by the instant asbestos actions. The court stated that a stay as to one codefendant does not require a stay as to the other where each defendant may be jointly and severally liable. *See also,* affirming the proposition that the stay provision does *not* apply to codebtors, suretys, guarantors or partners: *In re Dino Smith,* 14 B.R. 956 (Bkrtcy.D.C. Conn.1981) (action against the debtor of student loan and guarantor of loan); *In re The Bank Center, Ltd.,* 15 B.R. 64 (Bkrtcy. W.D.Pa.1981) (action against general partners of bankrupt partnership to confirm adverse judgment on arbitration award); *In re The Van Shop,* 8 B.R. 73 (Bkrtcy.N.D. Ohio 1980) (trustee not entitled to recover money setoff by creditor bank from account of corporation's president, a coobligor on a promissory note); *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bkrtcy.E.D.N.Y.1980) (action against guarantors of a loan); *In re Cloud Nine,* 3 B.R. 202 (Bkrtcy.D.N.Mex. 1980) (allows creditors to continue state court action against codebtors); *In re REA*

*Express,* 23 C.B.C. 245 (Bkrtcy.S.D.N.Y. 1980) (civil rights action against codefendant union).

These cases emphasize consistently that section 362 and its analogous predecessors serve to protect the estate of the *bankrupt* alone and do not encompass actions against related but independent codefendants. Defendants attempt to distinguish this precedent by asserting that in each, the codefendants owed an independent, contractual liability on the same debt. This assertion is not entirely accurate and, moreover, does not vitiate the more general principle mentioned above, which runs throughout the cases. The fact that the codefendants herein are jointly and severally liable as joint tortfeasors, rather than jointly liable as contractual obligors, is a distinction without a difference for present purposes.

We are thus in accord with the recent opinion of Judge Justice in *Kindle v. Fibreboard,* No. TY–79–35–CA (E.D.Tex. Aug. 12, 1982). *Kindle* ordered that all claims and cross-claims brought by or against Unarco be severed and stayed and the remaining actions be permitted to proceed.[3] The court's reasoning tracked that in the aforementioned cases which were consonant with *Royal Truck.* Indeed, the court relied upon *Royal Truck's* comparison of Chapter 13 and Chapter 11 provisions, noting that Congress' *silence* would seem to indicate that 362 does *not* apply to codebtors. He delineated the legislative history which alluded to the intended debtor "breathing spell," and averred that severance would not interfere with the orderly arrangement of Unarco's affairs by the Bankruptcy Court. Finally, he emphasized:

> Even more important, however, is the fact that the plaintiffs have alleged serious injuries and are, presumably, in need of the compensation they seek in these civil actions. While it may well be that defendants cannot be held liable for any injuries that plaintiffs may attempt to establish at trial, clearly plaintiffs' right

---

**3.** A writ of mandamus was denied without opinion by the United States Court of Appeals

on August 20, 1982.

to a day in court should not be further postponed.

Defendants have marshalled little support for a contrary conclusion. They rely primarily upon *In re White Motor Credit Corp.,* 11 B.R. 294 (Bkrtcy.N.E.Ohio 1981), which involved a Chapter 11 proceeding filed by White Motor, a company which was a codefendant in myriad products liability suits. In construing the effects of a stay— *not* involved in that case—the court remarked that the stay precluded any action in the products liability suits, including any action against codefendants.

> [T]he stay operates as a windfall benefit to co-defendants and insurance companies who, along with the debtor, enjoy many of the benefits of the moratorium. Nevertheless, for many reasons (perhaps including section 362 itself), products liability plaintiffs cannot dismiss a reorganization debtor and proceed against co-defendants only. Actions taken in violation of the stay are without effect.

*Id.* at 295. This comment, however, was merely gratuitous dictum. The scope of a 362 stay was *not* at issue in the case; in fact, *White Motor* actually involved the statutory authority *vel non* of a bankruptcy court to appoint a special master. The court did not engage in a careful analysis of section 362, but merely stated baldly its conclusions. Moreover, the two cases upon which it relied, *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) and *Potts v. Potts,* 142 F.2d 883 (6th Cir. 1944), *cert. denied,* 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945), did not involve an issue of codefendants.

In *Federal Life Insurance Company (Mutual) v. First Financial Group of Texas, Inc.,* 3 B.R. 375 (D.C.S.D.Tex.1980), the district judge refused to permit a plaintiff to sever its claim against the bankrupt and proceed against the individual defendants, one of whom was a corporate officer of the bankrupt, on a charge of procuring monies by fraud and misrepresentation. The court stated that the allegations against the bankrupt and its officers were "inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding," *id.* at 376, and "arise from the same factual and legal basis." *Id.* at 377. Despite this language, the court seemed to rest its conclusion not on the automatic stay provision, but on the court's inherent discretion to permit or deny severance of actions in light of considerations of justice and efficiency.

The reasoning of neither *White Motor* nor *Federal Life* appears to be determinative of the instant issues. *Federal Life* had emphasized that severance "would not be conducive to judicial economy and would unduly hinder the efforts of the Bankruptcy Court." *Id.* at 376. With thousands of cases pending across the country, involving entirely independent codefendants, these considerations are not applicable herein.

In light of the above authority, this court concludes that section 362 does not apply to claims against non-bankrupt codefendants.

### IV.

■ There is no impediment to a severance of Unarco and Johns-Manville under Rule 19 of the Federal Rules of Civil Procedure, for they are not indispensable parties. Joint tortfeasors are not considered indispensable parties under federal law. *Field v. Volkswagenwerk AG,* 626 F.2d 293, 298 n.7 (3d Cir. 1980); *Herpich v. Wallace,* 430 F.2d 792, 817 (5th Cir. 1970); *Kindle, supra; Windert Watch Co., Inc. v. Remex Electronics, Ltd.,* 468 F.Supp. 1242, 1246 (S.D.N.Y. 1979); 7 Wright & Miller, *Federal Practice and Procedure* § 1623 at 241–42 (1973 & Supp. 1981). The court in *Royal Truck* considered that very point. The co-debtor contended that a stay of the proceedings was necessary because the bankrupt was an indispensable party under Rule 19. The court disagreed. In reaching its conclusion, the court analyzed the four interests suggested by Rule 19(b) that must be examined in each case to determine whether "in equity and good conscience" the court should proceed without a party whose absence from the litigation is desirable. The codefendant in that case made the very arguments that are being presented to this court

to justify extension of the stay to all parties: 1) an interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability defendant shares with another; 2) the interest of the courts and the public in complete, consistent and efficient settlement of disputes. The court rejected the co-debtor's argument, premising its decision upon the joint and several liability of all codefendants. We are in accord with the result in *Royal Truck.*

Hence, pursuant to Rule 21, FRCP, which provides:

> Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

and Rule 42(b), FRCP, which reads:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States[,]

this court has power to sever all claims against Unarco and Johns-Manville. Such severance is in the discretion of the court. *Parmer v. National Cash Register Co.,* 503 F.2d 275 (6th Cir. 1974); *United States v. Wyoming National Bank of Casper,* 505 F.2d 1064 (10th Cir. 1974); *Garber v. Randell,* 477 F.2d 711 (2d Cir. 1973); *Walsh v. Miehle-Goss-Dexter, Inc.,* 378 F.2d 409 (3d Cir. 1967).

### V.

█ Defendants urge that, even if the 362 stay does not apply here, we invoke our inherent power and stay further prosecution of plaintiffs' claims against the non-bankrupt codefendants. It is true that this court has a broad and inherent power over its own process, " 'to prevent abuses, oppression and injustice,' so 'as not to produce hardship'; and to so substantial justice.' " 1 Moore's *Federal Practice* ¶ 0.60[6] at 634 (1982). As the United States Supreme Court cogently stated in *Landis v. North American Company,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936):

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. . . .
>
> The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

The Court further affirmed the proposition that discretion would be "abused by a stay of indefinite duration in the absence of a pressing need." *Id.* at 255, 57 S.Ct. at 166. Accord, *Dellinger v. Mitchell,* 442 F.2d 782, 786–88 (D.C.Cir.1971).

█ On the basis of these principles, we examine defendants' request that this court grant a brief stay of all proceedings involving Unarco and Johns-Manville, awaiting the results of petitions pending before the bankruptcy courts in Illinois and New York, which seek relief from the automatic stay. We see little point in such a temporary stay. If the stay is lifted, Unarco and Johns-Manville will re-enter the litigation and settlement proceedings; if denied, the plaintiffs can proceed against remaining codefendants. Moreover, the bankruptcy courts may not address the petitions immediately. Hence, continued delay and uncertainty may ensue. Such delay is not costless to these plaintiffs, many of whom are suffering financial hardship and who seek dam-

ages to redress their injuries; and some of whom are dying and whose testimony must be perpetuated. The defendants may be inconvenienced by the expeditious resumption of the actions against them. However, under *Landis*, the balance of hardship weighs in favor of the injured plaintiffs.

A "temporary" stay which was keyed to the resolution of the pending "relief-from-stay" petitions in the bankruptcy courts could, indeed, become one of nearly "indefinite," or, at least, unpredictable, duration. These plaintiffs should not be thus denied a forum in which to pursue their claims against those defendants who remain unshielded by the bankruptcy laws. Furthermore, this court has established a settlement structure which is ongoing; plaintiffs' desire to proceed with these systematic negotiations should be accommodated and facilitated. Finally, refusing such a stay will not preclude those defendants who have expressed a desire to participate in settlement proceedings from doing so.

IT IS THEREFORE ORDERED that all claims, counterclaims, cross-claims and third-party claims brought by or against defendants Unarco or Johns-Manville are hereby severed and stayed. All remaining claims involving other parties shall proceed unabated.

### ORDER

■ This court has duly considered the request of defendants for amendment of our order of September 14, 1982, in *In re Related Asbestos Cases*, No. C–79–3588, and has concluded that said request shall be denied. When a party seeks to take an interlocutory appeal under 28 U.S.C. § 1292(b), the district court must determine whether (1) the order involves a controlling question of law (2) as to which there is substantial ground for difference of opinion and that (3) an immediate appeal may materially advance the ultimate termination of the litigation. The order at issue does not satisfy these criteria.

■ The September 14 order encompassed two rulings: one which interpreted the meaning of 11 U.S.C. § 362 and one

which declined to exercise this court's inherent discretion to control its own process so as to impose a temporary stay of all asbestos-related proceedings in which Unarco and Johns-Manville had been parties. We are of the opinion that the scope of the section 362 automatic stay is not an issue concerning which there is substantial ground for difference of opinion. The statutory language, legislative history and interpretive case law would seem unequivocally to support our conclusion that 362 does not apply to claims against non-bankrupt codefendants. We recognize that some courts, when faced with cognate situations, have imposed temporary stays upon all proceedings. However, many of these stays have been extended in the exercise of the courts' discretion, rather than as the result of statutory interpretation. We are aware of no thorough analysis of the scope of section 362 that is in conflict with this court's order. Indeed, the Bankruptcy Court for the Northern District of Illinois, Eastern Division, wherein Unarco has filed its Chapter 11 petition, is in concordance with our opinion concerning the scope of the automatic stay. *In re UNR Industries, Inc., et al.*, 23 B.R. 144 (Bkrtcy.1982). Moreover, an immediate appeal of the section 362 issue will not advance the *ultimate* termination of the litigation, but instead will merely delay the litigation and potential settlements and, more importantly, will further jeopardize the interests of the injured plaintiffs. Certification under 1292(b) "is intended to be used in the few situations where an immediate appeal . . . would more speedily terminate the litigation." *Himebaugh v. Smith*, 476 F.Supp. 502, 512 (C.D.Cal.1978).

■ The denial of a temporary stay of proceedings—the second aspect of our September 14 order—is a matter which lies within the discretion of the district court. Although the question whether *vel non* a court has abused its discretion in granting or denying a stay can on rare occasions be considered a controlling question of law subject to a 1292(b) appeal, *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 598 (9th Cir. 1964),

[o]rdinarily, a district court should refuse to certify such matters, not only because of the low probability of reversal, but also because the recognition of discretion results from a studied determination that appellate courts should not generally interfere.

C. Wright & A. Miller, 16 *Federal Practice and Procedure* § 3930 at 161 (1977 & Supp. 1981).

In most cases, an appeal under 1292(b) is an inappropriate vehicle for appellate review when there is no dispute concerning the *fact* that the district is indeed vested with discretion over a particular matter, as is the case herein.

■ The Ninth Circuit has recently stated that

the legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.

*In re Cement Antitrust Litigation,* 673 F.2d 1020, 1026 (9th Cir. 1982). The court insisted that a matter which is "collateral to the basic issues" of a lawsuit, *id.* at 1027, was not a controlling question of law suitable for a 1292(b) appeal; it rejected the notion that "some time at the district court level [might] ultimately be saved," *id.,* or that the resolution of an issue could "appreciably shorten the time, effort, or expense of conducting a lawsuit," *id.,* could satisfy the statutory criterion. An expeditious appeal of our order would "not materially affect the *outcome* of this litigation," *id.* (emphasis added), nor do we discern any "exceptional circumstances" justifying such an appeal. Moreover, the plight of the plaintiffs herein militates against such a finding.

■ Defendants have requested a temporary stay of all proceedings in all actions arising from allegations of asbestos-related injuries filed in this court in order that defendants may apply to the Ninth Circuit. Such a stay would be disruptive of settlement proceedings that have long been calendared. We therefore decline to issue a stay of any duration.

IT IS HEREBY ORDERED that defendants' requests for amendment of our September 14 order and for a temporary stay of all asbestos-related proceedings is denied.