In re The WHITE MOTOR CREDIT COR-
PORATION, White Motor Corporation,
Gemini Manufacturing Company, White
Farm Equipment Company, White Mo-
tor Corporation of Canada Limited, the
White Motor Credit Corporation of Can-
ada Limited, Debtors.

CITIBANK, N. A. and the other bank
creditors listed on Exhibit 1,
Appellants,

v.

The WHITE MOTOR CORPORATION,
Debtor and Debtor in
Possession, Appellee.

No. C 81–1088.

United States District Court,
N. D. Ohio, E. D.

Sept. 20, 1982.

See also 11 BR 294.

Joseph Patchan, Cleveland, Ohio, for appellants.

John C. Parks, Cleveland, Ohio, for appellee.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

The appeal before this Court challenges the Bankruptcy Court's order of April 22, 1981, appointing a Special Master for the disposition of product liability claims. That Order was amended on May 27, 1981 to correct the Bankruptcy Court's language which erroneously had stated that the Order was entered "with the consent of the creditors". On May 1, 1981, the bank creditors filed their Notice of Appeal,[1] together with a Motion for a Stay. The Motion for A Stay was denied on May 18, 1981.

This Court has jurisdiction pursuant to the Bankruptcy Reform Act of 1978, Pub.L. No.95-598, Title IV, § 405(c)(2), 92 Stat. 2549, 2685 (1978) which provides that during the transition period from October 1, 1979 through March 31, 1984, the jurisdiction of the district courts to hear bankruptcy appeals shall be governed by the future 28 U.S.C. § 1334.

The relevant facts are not in dispute. On September 4, 1980, debtor-appellee, White Motor Corporation (hereinafter "White"), and five affiliates filed reorganization proceedings pursuant to Chapter 11 of the Bankruptcy Code. White is engaged primarily in the manufacture and sale of heavy duty trucks and their major components. White's gross sales for the year ending December 31, 1979 exceeded 1.2 billion dollars. Measured thus, White's reorganization was the largest matter theretofore filed under the new Bankruptcy Code. Unsecured creditors of the parent corporation are owed roughly $250,000,000.

Among the unsecured claims against the debtors are some 160 pending product liability claims in suits filed in various state and federal courts throughout the nation. Each of these suits were in various procedural postures at the time of the filing of the debtors' petitions, and since that time, all but one have been stayed by virtue of the provisions of 11 U.S.C. § 362(a). Each of these product liability suits presents a contingent and unliquidated claim which must be fixed or liquidated in order for White to close its reorganization.

On April 22, 1981 White, asserting that liquidation of the contingent products liability claims in the various forums where they were then pending would unduly delay the closing of its bankruptcy reorganization, filed an application for the approval of a program for the overall disposition of the products liability claims, including a request for the appointment of a Special Master.

On that same date, following a hearing, the Bankruptcy Court issued its Order appointing a Special Master to

... resolve all [product liability] 'Claims' ... and to take and hear the evidence offered by the appropriate parties and to make findings of fact and conclusions of law on all issues presented ...

---

1. On May 4, 1981, the creditors filed, in this Court, an Application for Leave to Appeal the Order. Apparently the Order has been regarded by all parties involved, including the Clerks of both the Bankruptcy Court and this Court, as a final order. As a result, the case has been assigned a civil number; the record has been certified to this Court by the Bankruptcy Court; the parties, by Stipulation, have supplemented the record transmitted on appeal; the merits have been fully briefed; and neither the appellees nor the Securities & Exchange Commission have opposed the Application for Leave to Appeal. Insofar as it may be necessary, this Court grants the Motion for Leave to Appeal.

Appellant creditors urge that the bankruptcy court is not an Article III court and therefore has no authority to appoint a Special Master. They pray that this Court vacate that appointment.

Appellee White urges (1) that the bankruptcy court has all of the power of the district court, including the authority to appoint a Special Master, at least in exceptional circumstances, which it claims exist here; and (2) that the issue with respect to the authority of the bankruptcy court was not properly raised before that court, and therefore cannot be appealed to this Court.

## CONCLUSIONS OF LAW

### I

White contends that the creditors are raising the issue of the authority of the Bankruptcy Court to appoint a Special Master for the first time in this appeal, and that therefore this Court should refuse to consider the issue. This argument is without merit for two reasons.

■ (1) Although a general rule of appellate procedure precludes an appellate court from reviewing matters and objections not presented to the lower court, the question of subject matter jurisdiction in federal courts has long been an exception to that rule. 5 Wright & Miller, *Federal Practice and Procedure*: § 1393 at 866 (2d ed. 1979), and cases there cited. This Court is obliged to review the propriety of the bankruptcy court's jurisdiction because "(a)n appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). *See also, McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

■ (2) An important reason for the general rule requiring timely objection, prior to appeal, is the need to afford the lower court an opportunity to reconsider its ruling. It is clear from the Bankruptcy Court's Order Denying a Stay of the Appointment of the Special Master that the creditors' objections to that Court's jurisdiction were made known to the Bankruptcy Court through the creditors' Memorandum in Support of their Motion for a Stay. In its Order denying a Stay, the Bankruptcy Court addressed at length the challenges to its jurisdiction.

■ Accordingly, this Court finds that the creditors did present their jurisdictional objections to the Bankruptcy Court, and it ruled upon those objections. Furthermore, even if the objections had not been made, this Court may still properly review challenges to the Bankruptcy Court's subject matter jurisdiction.

### II

A.

The decision of June 28, 1982 in *Northern Pipeline Company v. Marathon Pipe Line,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 furnishes definitive guidance to this Court with respect to the substantive question presented for appeal. A plurality of four justices decided that the assignment by Congress to bankruptcy judges of the broad jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978 violates Article III of the Constitution. In that case, Marathon Pipe Line Company was named as a defendant in a suit brought by Northern Pipeline, which was a debtor in a United States Bankruptcy Court. The suit sought damages for breach of contract and warranty. Marathon moved to dismiss the action on the grounds that the Bankruptcy Act of 1978, which authorized the suit, violated Article III of the Constitution because it conferred Article III judicial power on bankruptcy judges, who lack life tenure and protection against salary diminution. The two concurring justices limited their decision to the facts in the particular case. Holding only that insofar as the Bankruptcy Act of 1978 enables the bankruptcy court to entertain and decide Northern's lawsuit over Marathon's objection, the two justices ruled that the Act violates Article III of the United States Constitution.

This Court, like the concurring justices, takes no position with respect to the broad jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978. This opinion is confined to its particular facts.

It is clear that six judges of the United States Supreme Court agree that a bankruptcy court is not an Article III court. The product liability claims to be resolved by the Special Master, like the contract and warranty claims in *Northern*, involve "counts which are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.... No method of adjudication is hinted, other than the traditional common law mode of judge and jury ..." *Northern, supra* at 2881. In this case, as in *Northern*, the plaintiffs' claims arise entirely under state law. In neither *Northern* nor this case is there a federal rule of decision provided for any of the issues. The product liability claims here, as in *Northern*, are before the Bankruptcy Court only because one of the parties has previously filed a petition for reorganization in that court.

■ It appears clear to this Court that six judges of the United States Supreme Court would, without doubt, find that the Bankruptcy Court, *as presently constituted*, has no authority to hear the claims presented by the plaintiffs in these product liability suits over those plaintiffs' objections. It follows, as night follows day, that if the Bankruptcy Court lacks the authority, constitutionally, to entertain the plaintiffs' claims in product liability suits, then the Bankruptcy Judge cannot delegate authority which he does not have to a Special Master to hear those claims. The Order appealed from here appoints a Special Master for the purpose of hearing those claims, and for no other purpose. That appointment cannot stand.

This is not to suggest that a bankruptcy court has no power to appoint a Special Master. In appropriate circumstances, perhaps it can. However, it cannot appoint a Master to resolve claims which the bankruptcy court itself lacks the authority to entertain.

B.

The same six justices also agree that their decision in *Northern* should apply only prospectively. *Id.* at 2880, 2882. Clearly, this means that the discharges and judgments entered by the various bankruptcy courts prior to June 28, 1982 are validated. *Buckley v. Valeo*, 424 U.S. 1, 142, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976).

■ The specific references to *Chicot County Drainage Dist. v. Bank*, 308 U.S. 371, 376–377, 60 S.Ct. 317, 319–320, 84 L.Ed. 329 (1940); and *Insurance Corp. v. Compagnie Des Bauxites*, —— U.S. ——, ——, n.9, 102 S.Ct. 2099, 2104, n.9, 72 L.Ed.2d 492 (1982) in *Northern*, note 41, relate to the question of res judicata and collateral attack. It is eminently clear that a federal court sitting in bankruptcy has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action.

■ In the instant case the creditors are not collaterally attacking the jurisdiction of the bankruptcy court. On the contrary, they have directly challenged the jurisdiction of the bankruptcy court and have appealed the adverse determination of the bankruptcy court with respect to its authority to appoint a Special Master to determine product liability claims. This Court holds that the ruling of the Supreme Court in *Northern Pipeline*, to the effect that it is to be applied only "prospectively" does not prohibit the appeal that is now pending.

C.

In *Northern Pipeline*, the six justices also agreed to stay the effect of their decision until October 4, 1982.

The judgment of the District Court is affirmed. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws. See *Buckley v. Valeo*, 424 U.S. 1, 143 [96 S.Ct.

**280**

612, 693, 46 L.Ed.2d 659] (1976); cf. *Georgia v. United States,* 411 U.S. 526, 541 [93 S.Ct. 1702, 1711, 36 L.Ed.2d 472] (1973); *Fortson v. Morris,* 385 U.S. 231, 235 [87 S.Ct. 446, 448, 17 L.Ed.2d 330] (1966); *Maryland Comm. v. Tawes,* 377 U.S. 656, 675–676 [84 S.Ct. 1429, 1439–1440, 12 L.Ed.2d 595] (1964).

Id. at 2880.

The stay raises the question of the validity of bankruptcy court actions *after* June 28, 1982 until October 4, 1982. The Court's choice of cases cited in *Northern* and *Buckley,* as well as their precise wording, is instructive.

In *Buckley,* the Court held that, since the method by which Federal Elections Commission members were selected was unconstitutional, the Commission could not exercise all of the administrative powers granted it under the statute. *Buckley, supra,* 424 U.S. at 142, 96 S.Ct. at 693. Referring to previous cases dealing with apportionment and voting rights, the *Buckley* Court authorized the Commission to exercise, during a thirty day stay, those duties and powers granted it under the Act, which the Court had found constitutionally permissible. *Id.*

[T]he Commission's inability to exercise *certain powers* because of the method by which its members have been selected should not affect the validity of the Commission's administrative actions and determinations to this date, including its administration of *those provisions, upheld today,* authorizing the public financing of federal elections.

.    .    .    .    .

This limited stay will afford Congress an opportunity to reconstitute the Commission by law or to adopt other valid enforcement mechanisms without interrupting enforcement of *the provisions the Court sustains,* allowing the present Commission in the interim to function de facto in accordance with the substantive provisions of the Act. *Cf. Georgia v. United States,* 411 U.S. 526, 541, 36 L.Ed.2d 472, 93 S.Ct. 1702 [1711] (1973); *Fortson v. Morris,* 385 U.S. 231, 235, 17 L.Ed.2d 330, 87 S.Ct. 446 [448] (1966); *Maryland*

*Comm. v. Tawes,* 377 U.S. 656, 675–676, 12 L.Ed.2d 595, 84 S.Ct. 1429 [1439–1440] (1964). [Emphasis supplied.]

*Id.* 424 U.S. at 143, 96 S.Ct. at 693.

In none of the cases cited in both *Buckley* and *Northern* did the Supreme Court authorize, during a stay, the exercise of powers which it had found to be constitutionally impermissible. In *Tawes,* the Court held that legislators could not be re-elected pursuant to an unconstitutional apportionment plan. No stay was involved. In *Fortson* the Court affirmed the validity of the election of a governor by a malapportioned legislature, but held that legislators could not be re-elected under the same plan. And in *Georgia,* the Court allowed an election to proceed during the pendency of an appeal, then validated the election although it later held the apportionment plan impermissible. It is important to note that the Court allowed the election to proceed *prior* to its finding of an impermissible plan, and *not* afterwards. *See* Flowers, B. J. in *Armco Inc. v. Cherry Pond Coal Company and Kessler Coals, Inc.,* 21 B.R. 588, 9 B.C.D. 224, (Bkrtcy.S.D.W.Va.1982).

█ This Court therefore concludes that *Northern* does not support the proposition that the thirty day stay permits a bankruptcy court to exercise jurisdiction *specifically* found impermissible by the six judges responsible for the plurality and concurring opinions.

Even if this Court were to apply the rather simplistic approach of those judges who believe that the thirty day stay provides an "amnesty" for bankruptcy judges to exercise all the broad jurisdiction conferred by Section 241(a) (See Copenhaver, J. in *Armco, Inc. v. Cherry Pond Coal Company and Kessler Coals, Inc.,* 21 B.R. 588, 9 B.C.D. 439 (Bkrtcy.S.D.W.Va.1981)) it would be constrained to vacate the appointment of the Special Master in this case. It is inconceivable that the Special Master appointed herein to resolve the product liability claims (the sole purpose for which he was appointed) could accomplish that result before October 4, 1982. Therefore, it appears

to this Court that his continued service will be wasteful of, and expensive to, the debtor's estate.

For the foregoing reasons, the Bankruptcy Court is directed to vacate its Order of April 22, 1981 appointing Sam A. Zingale as Special Master for the Disposition of Product Liability Claims. This case is remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

IT IS SO ORDERED.