In re WHITE MOTOR CORPORATION, Gemini Manufacturing Co., White Motor Corporation of Canada Limited, the White Motor Credit Corporation of Canada Limited, Debtors.

ROCKWELL INTERNATIONAL CORPORATION, et al., Appellants,

v.

WHITE MOTOR CORPORATION, Appellee.

The TIMKEN COMPANY, Appellant,

v.

WHITE MOTOR CORPORATION, Appellee.

SKF INDUSTRIES, INC., Appellant,

v.

WHITE MOTOR CORPORATION, Appellee.

Robert L. DEATON, Garelick Farms, Inc. and Hanover Insurance Company, Appellants,

v.

WHITE MOTOR CORPORATION, Appellee.

Elva C. LEAPHART and Quentin R. Corrie, Esq., Administrators of the Estate of Newton Bennie Leaphart, Appellants,

v.

WHITE MOTOR CORPORATION, Appellee.

Larry MOORE and Brenda
Moore, Appellants,

v.

WHITE MOTOR CORPORATION,
Appellee.

Misc. Nos. 82–38 to 82–42.

Civ. A. No. C82–2426.

United States District Court,
N.D. Ohio, E.D.

Oct. 12, 1982.

Marvin A. Sicherman, Dettelbach & Sicherman, Cleveland, Ohio, for appellants.

John C. Parks, Squire, Sanders & Dempsey, Cleveland, Ohio, Levin & Weintraub, New York City, for appellee.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Pending before this Court are the appeals in the six cases consolidated above, challenging the Bankruptcy Court's Order Regarding Product Liability Claims Disposition Program, (hereinafter the "Order") entered July 7, 1982. Appellants claim that the Bankruptcy Court did not have jurisdiction over the state-created claims which it ordered should be resolved according to the challenged Product Liability Claims Disposition Program (hereinafter the "Program").

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, Title IV, sec. 405(c)(2), 92 Stat. 2549, 2685 (1978).

The Order was entered as part of debtor-appellee White Motor Corporation's (hereinafter "White") reorganization proceedings under Chapter 11 of the Bankruptcy Code. The Order approves a plan, submitted by White, to dispose of the more than 120 different product liability suits which have been filed against White during its many years of operation prior to the filing of its reorganization petition. Appellants are either plaintiffs (widows and surviving children of persons injured by allegedly defective White products), or co-defendants with White in product liability suits brought against it by parties injured by allegedly defective White products. All assert state-created rights grounded in common law. This Court has previously issued a Stay, preventing the Special Master from implementing a Hearing Memorandum pursuant to the challenged Program. This Court now rules on the validity of the challenged Program and notes that its decision in *Citibank, N.A. v. White Motor Corporation,* 23 B.R. 276 (N.D.Ohio 1982) is controlling.

In that decision, this Court held that the Bankruptcy Court, as presently constituted, did not have jurisdiction to appoint a Special Master for the purpose of disposing of the numerous product liability claims pending against White Motor. The Bankruptcy Court was directed to vacate its Order appointing the Special Master. This Court finds that the Order approving the challenged Program must also fall.

█ As stated in *White Motor, supra,* the Bankruptcy Court cannot appoint a Special Master to resolve claims which the Bankruptcy Court itself lacks the authority to entertain. *Id.* at 279. Accordingly, the Bankruptcy Court cannot approve a Program under which a Special Master is to dispose of claims which neither the Bankruptcy Judge nor the Special Master have the power to hear. As discussed in the opinion of September 20, the prospective application of the Supreme Court's decision in *Northern Pipeline Company v. Marathon Pipe Line,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) does not preclude today's decision.

█ In its Brief of Appellee, White contends that the decision in *Northern Pipeline* should have no affect on bankruptcy courts' functions until after the Supreme Court's Stay of its decision is lifted. This Court, in its decision of September 20, 1982, ruled differently and continues to reject White's argument. A careful reading of the cases cited by the Supreme Court to clarify the meaning and extent of its stay in *Northern Pipeline* reveals that in none of the cases cited for clarification did the Supreme Court authorize the continued exercise, during a Stay, of the powers which it had found to be constitutionally impermissible. *See, Buckley v. Valeo,* 424 U.S. 1, 143, 96 S.Ct. 612, 693–694, 46 L.Ed.2d 659 (1976); c.f. *Georgia v. United States,* 411 U.S. 526, 541, 93 S.Ct. 1702, 1711, 36 L.Ed.2d 472 (1973); *Fortson v. Morris,* 385 U.S. 231, 235, 87 S.Ct. 446, 449, 17 L.Ed.2d 330 (1966); *Maryland Comm. v. Tawes,* 377 U.S. 656, 675–676, 84 S.Ct. 1429, 1439–1440, 12 L.Ed.2d 595 (1964). This Court rules that the Stay in *Northern Pipeline* does not support White's argument that the bankruptcy court may continue to exercise jurisdiction *specifically* found impermissible. The Bankruptcy Court's exercise of jurisdiction, after September 20, 1982, to authorize the implementation of a Program which would have functioned under its supervision, is impermissible for the reason that on that date, this Court held that the Bankruptcy Court is without power to hear the claims to be disposed of under the Program. Moreover, while the Supreme Court's decision in *Northern Pipeline* provided helpful guidance to this Court in *White Motor,* *Northern Pipeline* was not controlling. *White Motor, supra,* 23 B.R. at 278. This Court does not rely exclusively on *Northern Pipeline* to support its decision in *White Motor* and in the instant case.

White contends that the Supreme Court ruled that the various jurisdictional grants in 28 U.S.C. § 1471 were not severable; therefore, White asserts the bankruptcy courts are totally stripped of all powers

from June 28 to December 24,[1] if the Stay is not applied *carte blanche.* White's reading of *Northern Pipeline* is carelessly erroneous. Only four of the Justices found the § 1471 powers were not severable. The two concurring Justices, whose concurrence provided needed votes for a majority, and hence whose opinion define the true extent of the decision in the case, specifically disagreed with the broad holding that the "jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978 . . . violated Article III of the Constitution." *Northern Pipeline, supra,* at 2881. Rather, the concurring Justices limited their decision to "hold so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court to entertain and decide Northern's lawsuit over Marathon's objection to be violative of Art. III of the United States Constitution." *Id.* at 2882. The effect of the concurrence, clearly, is to prevent the stripping of all jurisdiction from the bankruptcy courts once the Stay is lifted, contrary to White's argument. This Court rejects White's position that bankruptcy courts continue to exercise a pervasive grant of jurisdiction which extends to all civil proceedings arising in cases related to cases under Title 11 until December 24, 1982.

Although the issue is not specifically before this Court at this juncture, it appears to this Court that, under *Northern Pipeline* and *White Motor,* the bankruptcy courts may exercise the jurisdiction found impermissible in those cases, so long as a *de novo* review by an Article III Court is available. That jurisdiction is provided to the federal district courts pursuant to 28 U.S.C. § 1471.

▮ Having previously ruled that the Special Master's appointment was invalid, this Court next considers the effect of that invalid appointment on the Program challenged herein. Appellants Larry and Brenda Moore suggest in their brief that if the initial Order appointing the Special Master

was unconstitutional, then any subsequent Order assigning any case to the Special Master must also be void and unconstitutional. This Court rejects such a broad ruling. Rather, this Court holds that its decision in *White Motor* should not be applied retroactively to the date of the Special Master's appointment. Just as *Northern Pipeline* was to be applied only prospectively, *White Motor* shall be applied only prospectively and this Court again refers to the Supreme Court's guiding opinions in *Insurance Corporation of Ireland, Ltd., et al. v. Compagnie des Bauxites,* —— U.S. ——, n. 9, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376–377, 60 S.Ct. 317, 319–320, 84 L.Ed. 329 (1940) and *Buckley, supra,* 424 U.S. at 142, 96 S.Ct. at 693. Accordingly, the invalidity of the Special Master's appointment should not affect the validity of his actions up until the date of this Court's decision in *White Motor, supra.* The acts of the Special Master prior to September 20, 1982 are accorded *de facto* validity. See, *Buckley, supra,* 424 U.S. at 142, 96 S.Ct. at 693.[2] However, this *de facto* validity is limited in scope under *Chicot* and *Bauxites.* The Special Master's decisions suffer from defective subject matter jurisdiction. Parties involved in other claims, who have stood before the Special Master without objecting to his exercise of subject matter jurisdiction, are now precluded from collaterally attacking his decisions on that basis. *Bauxites, supra,* at 2104, n. 9. Parties who objected to and appealed from the Special Master's attempted exercise of jurisdiction, such as the appellants in the instant case, may litigate the question on appeal. The Special Master's decisions under the Program, while *de facto* valid and res judicata in a collateral attack, are open to direct review. *Chicot, supra,* 308 U.S. at 377, 60 S.Ct. at 320. In the instant case, appellants immediately ap-

---

1.  In an Order issued October 4, 1982, the Supreme Court extended its Stay in *Northern Pipeline* until December 24, 1982.

2.  This Court notes that although the reference to the Special Master was improper, the Bank-

ruptcy Court may nevertheless determine that he is entitled to be compensated for the services he rendered prior to September 20, 1982, *Adventures in Good Eating v. Best Places to Eat,* 131 F.2d 809 (7th Cir.1942).

pealed the Program and challenged the Special Master's ability to hear their claims. Appellants, therefore are entitled to attack the Special Master's jurisdiction on direct appeal. Even if appellants had failed to raise the issue of subject matter jurisdiction before the Bankruptcy Court, or in their appeals, this Court could raise it *sua sponte. Bauxites, supra* at 2105. Parties who have not objected to the Special Master's subject matter jurisdiction have waived the issue and may not assert a collateral attack. *Chicot, supra,* 308 U.S. at 377, 60 S.Ct. at 320.

The same limitation applies to this Court's decision herein to invalidate the Bankruptcy Court's approval of the Program for Disposition of Product Liability Claims. The Order approving the Program is to be vacated effective this date; however, claims disposed of under the Program prior to this decision, and not timely appealed, are accorded *de facto* validity. *See, Buckley, supra.* The disposition of those claims may not be collaterally attacked, but may only be reviewed on direct appeal. *See, Chicot* and *Bauxites, supra.*

For the foregoing reasons, the Bankruptcy Court is directed to vacate its Order of July 7, 1982 approving a program for the disposition of appellants' product liability claims. This Court's Stay of the implementation of the Special Master Hearing Memorandum, issued September 13, 1982, is hereby continued and the above captioned cases are remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

IT IS SO ORDERED.