In re EGERIA SOCIETA PER AZIONI DI NAVIGAZIONE, Debtor.

Bankruptcy No. 82–00647–N.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Jan. 14, 1983.

Jerrold G. Weinberg and Ann K. Kiley, Weinberg & Stein, Norfolk, Va., for Carlo Alhadeff, Com'r for Egeria Societa Per Azioni di Navigazione.

Walter B. Martin, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., for Egeria Societa Per Azioni di Navigazione.

Daniel R. Warman, Williams, Worrell, Kelly & Greer, P.C., Norfolk, Va., for Grandi Motori Trieste, S.p.A.

Carter B. Furr, Jett, Agelasto, Berkley, Furr & Price, Norfolk, Va., attorney for Ciel Y Cia S.A. and Comercia Y Cia S.A.

Richard I. Gulick and Glen Thompson, Gulick & Maynard, Norfolk, Va., for Kawasaki Heavy Industries, Ltd.

Richard T. Rober, Sewell, Dalton, Hughes & Timms, Norfolk, Va., for K/S Ditlev Chartering A/S & Co.

Richard Gluck and Edward M. Kech, San Francisco, Cal., Robert L. Mills, Reynolds, Smith & Winters, Norfolk, Va., for Istituto Mobiliare Italiano and Credito Navale.

Peter W. Rowe, Stackhouse, Rowe & Smith, Norfolk, Va., for E. Urquidi Co. and Norton, Lilly & Co.

## SECTION 304 MEETS MARATHON AND THE RULE AN OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

### In the Shadow of Marathon

To have been with the knights at Runnymede, the Founding Fathers at Philadelphia or society after *Zapata* in California would have been interesting if not awesome. That is to say, to be on the frontier with Boone, Armstrong or Hal the Computer is sobering. On such a frontier we are now afloat.

Drink in the intoxicants of (1) new law permitting foreign ancillary bankruptcy proceedings, 11 U.S.C. 304; (2) the effect of the Marathon case upon the bankruptcy courts (one may miss the point, but note the absence of capital letters); and (3) to cap it all, an admiralty case. Indeed, it is, I suggest, the outer space of present day legal proceedings.

In re Egeria Societa per Azioni di Navigazione [Egeria, if you will] came to the Bankruptcy Court on May 7, 1982, out of a foreign proceeding in the Republic of Italy. [Note well that 11 U.S.C. 304 does not speak of, nor require, a bankruptcy or insolvency proceeding.] Egeria was part of a larger, indeed a very huge Italian proceeding. Egeria's *res* within the jurisdiction of the Court was the M/V SORRENTO, a beautiful vessel under the protection of Saint Francisco riding at anchor in the great harbor of Hampton Roads. Prior to the bankruptcy, it had been attached in the U.S. District Court by creditors.

While a complicated proceeding worthy of the Southern District of New York, it would serve no great purpose to recite what has transpired other than to say the vessel was eventually ordered sold [jointly by the District and Bankruptcy Courts], it was sold on the courthouse steps and the $1,300,-000.00 it fetched is on deposit with the Clerk of this Court.

To the point we have now reached, it perked along well, efficiently, if not to everyone's liking, in the Bankruptcy Court. Three items of business remain on the docket:

(1) a preference suit against certain creditors,

(2) the consideration of claims against the funds in hand, primarily that of Istituto Mobiliare Italiano and Credito Navale [mercifully referred to as IMI, an Italian bank in general], and

(3) consideration of the debtor's, Egeria's, plan filed pursuant to 11 U.S.C. 304(b) and (c).

All of this the Court was preparing to decide when inertia descended, or was left on the doorstep. In its *Northern Pipeline Construction Co. v. Marathon Pipeline Co.* case, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), a splintered Supreme Court held that certain jurisdictional grants of the Bankruptcy Reform Act of 1978 to the United States Bankruptcy Judges were unconstitutional, these being jurisdictional powers that only an Article III judge could exercise. The effect of this June 28, 1982, opinion was stayed by the Supreme Court until October 4th to enable the Congress to cure the defect. When Congress did not remedy the matter by October 4th, that Court extended its stay to December 24th. Faced with the historical fact that something unconstitutional had been permitted to continue, even thrive, for six months, not a dog leash law but something of great

importance, that Court would grant no further stay when the Congress had again failed to act. Considering the volume and complexity of modern day bankruptcy cases and with the situation existing "on the border of hell" known as limbo, the Judicial Conference of the United States created a rule, which we shall call the Emergency Rule, which it recommended that the Courts of Appeals order the District Courts to adopt. This was ordered by the Court of Appeals for the Fourth Circuit on December 20th and adopted by order of the United States District Court for the Eastern District of Virginia on December 24th.

### The Present Task

Having said all of that lest this script fall into the hands of the uninitiated, we come to serve the present age. Certain creditors, K/S Ditlev Chartering A/S & Co.; Kawasaki Heavy Industries, Ltd.; and Ciel Y Cia S.A. and Comercia Y Cia S.A., filed motions to dismiss the bankruptcy proceeding chiefly on the constitutional grounds. The Court had the benefit of excellent briefs from both creditors and debtor.

*While there are many issues and such issues on the merits were touched upon by counsel at the January 10, 1983, hearing on the motions, let it clearly be understood that we wrestle here not against flesh and blood but solely upon the motions to dismiss the proceeding in the Bankruptcy Court and to detail subsequent procedure.*

*The real issue: In light of the Marathon decision <u>and</u> the Emergency Rule, what is the proper procedure now?*

The briefs and arguments touched upon many matters, segments of it unnecessary, but we consider only the proper route.

In approaching this we ask ourselves the question, "Is there anything here the United States Bankruptcy Court can do?"

### The Court Still Lives

■ The jurisdiction of the United States Bankruptcy Court to hear (1) "pure" bankruptcy matters or (2) to consider impermissible "ancillary" matters, as long as *de novo* review by an Article III court is available, was not eliminated by the Supreme Court's decision in *Marathon.*

In that case the Supreme Court held, by only four Justices, that "jurisdiction granted upon § 241(a) of the Bankruptcy Act of 1978 violated Article III of the Constitution." However, the two concurring Justices, whose votes were needed for majority action, disagreed with the overly broad holding and limited the decision to hold unconstitutional only "so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court to entertain and decide Northern's lawsuit over Marathon's objection to be violative of Article III." Id., at 102 S.Ct. at 2882. The ultimate effect of the concurrence is to prevent the elimination of *all* jurisdiction of the Bankruptcy Courts once the stay has expired. The concurring Justices envisioned the potential pandemonium that would occur if the Bankruptcy Courts were to cease to function as an institution to resolve bankruptcy related disputes. It is just such a situation that this Court is presented with today.

The majority in *Marathon* pointed out: "The restructuring of debtor-creditor relations, which is at the core of the Federal Bankruptcy power, must be distinguished from the adjudication of state-created private rights . . . ." Id., 102 S.Ct. at 2871–72. Therefore, the Supreme Court agrees that the United States Bankruptcy Court may continue constitutional reconstructive debtor-creditor relations on purely bankruptcy matters, just as it did prior to 1978.

There is another "grey" area upon which the Marathon decision did not eliminate United States Bankruptcy Court jurisdiction and that is so long as a *de novo* review by an Article III Court is available. Pursuant to 28 U.S.C. 1471, jurisdiction is provided to all federal District Courts to hear appeals from Bankruptcy Courts. This statute provides the access to an Article III Court for any party aggrieved by a decision of the United States Bankruptcy Court. In *Rockwell International Corp. v. The White Motor Corp.,* 24 B.R. 200, 9 B.C.D. 880 (D.C. N.D.Ohio 1982) District Judge Aldrich found that: "The Bankruptcy Courts may exercise the jurisdiction found impermissi-

ble by *Northern Pipeline,* so long as a *de novo* review by an Article III Court is available." Id., 203, 9 B.C.D. 882. Therefore, under *Northern Pipeline* and *White Motor* where *de novo* review by an Article III Court is available, the jurisdiction of the United States Bankruptcy Court still obtains.

### The Remaining Task

■ *Preferences* Egeria claims that the liens obtained by certain creditors against the SORRENTO, and now against the funds, are voidable preferences pursuant to bankruptcy law. 11 U.S.C. 547. Can a preference action be brought in a foreign ancillary proceeding? Clearly, yes, by virtue of 11 U.S.C. 304(c)(3) itself which states that the Court (bankruptcy) shall act to prevent "preferential or fraudulent dispositions of such estate."

This is, therefore, a bankruptcy issue.

A further question arises. Is a maritime lien sacred so that it is unapproachable by a bankruptcy preference action?

Many of us wondered if that Conflicts of Law class in law school would ever be practically helpful. This is a conflicts of law issue.[1]

Remember, too, that the bankruptcy court (little "b," little "c." It may be the United States District Court sitting as a bankruptcy court or it may be the United States Bankruptcy Court sitting upon the matter as automatically referred by the Emergency Rule.) is an admiralty court. 28 U.S.C. 1481.

But the conflict of laws issue is a defense as a preference action even as certain other defenses are enumerated at 11 U.S.C. 547(b). It could be properly brought on by a motion for summary judgment.

■ But it *is* a bankruptcy issue.

*Claims* There could be many claims, both large and small, secured and unsecured, against the fund in hand. Perhaps we are yet to hear from the butcher who delivered

his product or a seaman whose wages are unpaid. The particular claim in issue is that of the Italian bank, IMI. The other active creditors take plain issue with any assertion of IMI's claim arguing that the matter was disposed of when the District Court, on the basis of laches, denied IMI's efforts to attach the vessel or funds.

■ The consideration of claims is a basic consideration in bankruptcy and a frequent task. That IMI could not otherwise participate through attachment does not mean that it cannot pursue its claim in bankruptcy. A very broad definition is accorded "creditor" and "claims" by the Congress in the Bankruptcy Code, Section 101:

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or nor such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

(9) "creditor" means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h), 502(i) of this title; or

(C) entity that has a community claim;

It would be a gross, cavalier denial of the basic creditor right to close the door upon IMI.

The United States Bankruptcy Court routinely considers claims.

---

1. An interesting article touching upon this has been suggested and really should be read to broaden one's background. It is Landers: "The Shipowner Becomes A Bankrupt," 39

*U.Chi.L.Rev.* 490 (1972). It is somewhat outdated as the Bankruptcy Code, among other law, has since emerged.

■ *Plan* Egeria has proposed a plan pursuant to 11 U.S.C. 304. It may not be a good one, but it is entitled to a hearing on the merits as the United States Bankruptcy Court routinely considers these in Chapters 11 and 13 cases.

This Court is of the opinion that the three matters considered above are all bankruptcy matters.

### Who, Then, Shall Hear Them?

The Emergency Rule speaks of "related proceedings" and non-related ones. (d)(3)(A) A "related proceeding," in the drafter of the rule's opinion, is a proceeding a United States Bankruptcy Judge cannot enter final judgment upon by virtue of the Marathorn decision. A non-related one is a matter or proceeding which the Bankruptcy Judge could and can traditionally decide.

■ *Preference* This is letter-for-letter listed as a non-related, non-Marathon matter, if you will. (d)(3)(A)

*Claims* This, too, is an enumerated non-related proceeding.

*Plan* Again, "proceedings in respect to the confirmation of plans" is carried as a listed, non-related matter.

*Conclusively, the remaining matters, proceedings, are proceedings upon which a United States Bankruptcy Judge can enter a final order.*

*To hold otherwise would do great violence to the plain language of the Rule adopted by order of the Court of Appeals and the District Court.*

Nevertheless, it does appear from the Rule that the United States District Court can withdraw *anything* from the United States Bankruptcy Court, even discharge hearings. [I would be pleased to share the 3,000 to 4,000 of these a year.]

### Contra

Even if one disagrees and holds the three categories to be "related proceedings," they remain with the United States Bankruptcy Judge unless an order of withdrawal is entered by a United States District Judge. Emergency Rule (c)(1) and (2).

Therefore, in his discretion a District Judge can withdraw any or all of the three; however, the Rule does speak of the "specialized expertise necessary to the determination of bankruptcy matters" and that "the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges." Section (a).

### The Rule: Invalid?

It is somewhat unclear whether or not counsel for Ciel challenges the validity of the entire Emergency Rule. Since this was not clearly manifested, the attack will be treated as a skirmish and not an assault. [Unless directly challenged, we would assume its validity.]

■ Ciel does question the apparent lack of provision in the Rule for a trial *de novo* before the District Court on a "related proceeding" decided here. We would agree. It is a fallacy of the Rule, as provided under (e)(2)(B), to limit this.

That portion of the Rule is invalid for the reasons set forth above under "The Court Still Lives."

### The Earlier Decision

On July 28, 1982, this Court did conclude that the exercise of section 304 powers was unconstitutional. It would now appear, however, that upon the interpretation of the Judicial Conference, the Court of Appeals and the District Court, some jurisdiction can be exercised by the United States Bankruptcy Court.

### The Motion To Dismiss

Since bankruptcy proceedings remain, dismissal is clearly improper. In addition to the three bankruptcy proceedings remaining, allocation of bankruptcy costs of administration remains. A District Judge might withdraw the case, but it would be a miscarriage of justice to dismiss it. Such action would look to the narrow benefit of a few creditors while a thorough administration of the case will consider the rights of all of the creditors. No one, no one will be prejudiced by a full administration of the case [i.e. proceeding] pursuant to Section 304.

Conclusions

1. Consideration of alleged preferences, claims and the plan are in the realm of bankruptcy. 11 U.S.C. 304 itself is alive and well.

2. Proceedings to set aside preferences, the allowance of and objection to claims against the bankruptcy estate and proceedings in respect to the confirmation of plans are all non-related proceedings pursuant to the plain language of the Emergency Rule.

3. The Rule automatically refers such proceedings to the Bankruptcy Judge.

4. The District Court can withdraw to itself any proceeding in the Bankruptcy Court, according to the Rule.

5. The Emergency Rule is invalid to the extent it fails to provide for an out-and-out *de novo* hearing in the District Court of a conclusion reached in the United States Bankruptcy Court on a related proceeding.

6. The motions to dismiss the foreign ancillary proceeding in this Court are denied.

7. Barring withdrawal by the District Court, the proceedings will here continue.

The Decision For The District Court

An appeal being eminent, the District Court can:

(a) conclude that the proceedings are indeed non-related and are such matters upon which the Bankruptcy Judge can enter final judgment, or

(b) find them to be related proceedings, in part or in total, and withdraw them in part or in total, or

(c) still find them to be related proceedings, in part or in total, but decline to withdraw them.

Good Luck.

IT IS SO ORDERED.