Joseph W. Allen, III, Mason, Crotty, Dunn & McCarthy, Worcester, Mass., for plaintiffs.

Philip J. Hendel, Hendel, Collins & Stocks, Springfield, Mass., for defendant.

Kearons J. Whalen, Reder & Whalen, Pittsfield, Mass., for Creditors' Committee.

## In re JAMES HUNTER MACHINE COMPANY, INC., Debtor.

### James JEANETTE, Evelyn R. Jeanette, CNA Insurance Company, Plaintiffs,

### v.

### JAMES HUNTER MACHINE COMPANY, INC., Defendant.

Bankruptcy No. 4–83–00195–G.
Adv. No. 4–83–0207.

United States Bankruptcy Court, D. Massachusetts.

July 15, 1983.

### MEMORANDUM AND ORDER ON COMPLAINT FOR RELIEF FROM STAY

PAUL W. GLENNON, Bankruptcy Judge.

James Hunter Machine Company, Inc. ("Hunter" or "debtor") is engaged in the business of manufacturing, selling, repairing and servicing textile machinery and equipment. It filed its Chapter 11 petition on March 22, 1983 and has continued as a debtor in possession since that date.[1] The Court is aware of sixteen product liability lawsuits pending against the debtor in various procedural postures and forums across the country. In all but one of these suits,

---

1. 11 U.S.C. § 1108 provides: [u]nless the court orders otherwise, the trustee may operate the debtor's business. 11 U.S.C. § 1107 provides, in relevant part: "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter."

Hunter is a codefendant. Due to the nature of the business engaged in by Hunter, the injuries to the plaintiffs are generally quite extensive. The damages sought are high, as they are commensurate with the injuries sustained. In three of these actions, the debtor is covered by a commercial insurance company (although its deductible may be at risk). However, in the remaining suits, the debtor is not covered by a commercial insurance policy. In the late 1970's, the debtor elected to act as a self-insurer citing the high costs of product liability insurance,[2] and at that time, it discontinued commercial insurance coverage.

At present, three of the plaintiffs in the state court actions have come before the bankruptcy court seeking relief from the automatic stay to proceed with the state court actions. On at least one occasion this Court has approved a stipulation allowing the plaintiff to proceed in state court solely against the nondebtor codefendants.[3] In the action presently before me, the plaintiffs do not wish to proceed in state court solely against the nondebtor codefendants. Accordingly, the plaintiffs are seeking relief from the automatic stay to proceed in the Tennessee state court against all named defendants. The plaintiffs have stated that they would proceed in state court only to determine liability, and if appropriate, would then file a proof of claim for damages in this Court. The action is presently scheduled to commence on July 18, 1983.

All pre-trial discovery and motions are complete.[4]

The debtor opposes the relief requested and cites the high costs of litigation as a primary factor. The debtor recognizes that all pre-trial work has ended. It is the time and expenses necessarily incurred during the trial which Hunter seeks to delay. In addition, the debtor argues that those parties who would be necessary for its defense in Tennessee are required to be present in Massachusetts to conduct the day-to-day operations of its business.

The Court believes that the most cost efficient and expeditious course would be to allow the debtor some additional time to formulate and file a disclosure statement and plan of reorganization, and pursuant to 11 U.S.C. § 502(c)(1), estimate the total value of the claims of the similarly situated plaintiffs. "The automatic stay is one of the fundamental debtor protections provided for by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787, 5840. "The purpose of the . . . automatic

---

**2.** M.G.L. ch. 152 § 25A provides requirements for employers who choose to maintain self-insurance. M.G.L. ch. 152 § 25A(2) sets forth the funding required by the Commonwealth for self-insurance plans. The debtor alleges that the funds so deposited will be exhausted before all claims have been liquidated. For this reason, among others, the Court is continuing the automatic stay. However, the Court must assume that the funds are sufficient within the meaning of M.G.L. ch. 152 § 25A(2)(a). That section authorizes the division of industrial accidents to require an additional deposit if it believes the fund to be inadequate; 28 U.S.C. § 959(b) requires that a debtor in possession comply with applicable State laws.

**3.** As set forth in *In re Johns-Manville Corp.,* 26 B.R. 405, 409, 9 B.C.D. 1403, 1405 (Bkrtcy.S.D. N.Y.1983), "[t]he language of Section 362 clearly refers only to actions against the debtor and

does not relate to any other interparty claim" (citations omitted). *See also In re Related Asbestos Cases,* 23 B.R. 523, 9 B.C.D. 874 (D.C.N. D.Calif.1982) and *Royal Truck and Trailer v. Armatosa Maritima Salvadorena,* 10 B.R. 488 (D.C.N.D.Ill.1981). *Contra In re White Motor Credit Corp.,* 11 B.R. 294, 7 B.C.D. 885 (Bkrtcy. N.D.Ohio 1981), *rev'd on other grounds,* 23 B.R. 276, 9 B.C.D. 882 (D.C.N.D.Ohio 1982), *rev'd on other grounds,* 704 F.2d 254 (6th Cir.1983). However, the contrary language in that opinion has been dismissed as dicta by the courts in *In re Related Asbestos Cases, supra* and *In re Johns-Manville Corp., supra.*

**4.** Tennessee civil procedure requires trial counsel to submit certificates of readiness before the case is marked for trial. Counsel for the plaintiffs stated that these certificates were in fact submitted six months ago.

stay is clear: to prevent the dissipation or diminution of the bankrupt's assets during the pendency of the Chapter XI proceeding ... and to avoid the multiplicity of claims in different forums against the estate .... The issuance of a stay must be consistent with these two goals .... A stay of a suit pending against the bankrupt in another court is not a dismissal of the suit nor does it deprive the court of jurisdiction; it merely suspends the proceedings." *Paden v. Union for Experimenting Colleges and Universities,* 7 B.R. 289, 290 (Bkrtcy.N.D.Ill.1980) (citations omitted).[5]

Accordingly, the Court is willing to allow the debtor ninety (90) days to file its disclosure statement and plan, taking into account the potential claims of those persons injured by its machinery and equipment. The costs of litigation are high and the absence from the debtor's business of those parties necessary for its defense will be detrimental to the reorganization efforts of this corporation. Although these burdens may have to be borne by the debtor in the future, the Court wishes to allow the debtor some time to formulate an alternative remedy. The Court further recognizes the harm (and the constitutional violations) which will befall the state court plaintiffs if they are prevented from having their day in court. Therefore, the stay as against these plaintiffs shall remain in effect only for an additional ninety (90) days unless extended by further order of this Court. This stay has no effect upon the nondebtor codefendants. Therefore, the plaintiffs are free to pursue whatever rights they have against the nondebtor codefendants in state court.

SO ORDERED.

---

**5.** The district court, in that case, recognized that certain types of actions are generally not stayed (e.g. those which seek declaratory or injunctive relief). The action before the district court was one seeking both injunctive and declaratory relief, and monetary damages. The district court, faced with this conflict, found the multiplicity of claims factor to be less relevant. Here, I am not faced with this conflict and accordingly afford each of the goals of the automatic stay equal weight.