In the Matter of JOHNS–MANVILLE CORPORATION, et al., Debtor.

GAF CORPORATION, Keene Corporation, Armstrong World Industries, Inc., H.K. Porter Company, Inc., Pittsburgh Corning Corporation, Garlock, Inc., Eagle-Picher Industries, Inc., The Celotex Corporation, and Fiberboard Corporation, on behalf of themselves and the unofficial committee of Asbestos Case Co-Defendants, Plaintiffs,

v.

JOHNS–MANVILLE CORP., et al., Defendants.

Bankruptcy Nos. 82 B 11656 to 82 B 11676.

Adv. No. 82–6221A.

United States Bankruptcy Court, S.D. New York.

Jan. 10, 1983.

---

See also, Bkrtcy., 26 B.R. 420.

Levin & Weintraub, Davis, Polk & Wardwell, New York City, James Green, Denver, Colo., for debtor; Mitchell Perkiel, Barry Siedel, Dwight L. Greene, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Official Creditors Committee; John Gellene and John J. Jerome, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Owens-Illinois; Richard Krasnow and Ellen Werther, New York City, of counsel.

Jerome Feller, New York City, for SEC.

Anderson, Russell, Kill & Olick, New York City, for Keene Corp. and other plaintiffs; Arthur C. Olick and Irene C. Warshauer, New York City, of counsel.

Flemming Zulack & Williamson, New York City, Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, P.C., Newark, N.J., for GAF Corp.; Richard A. Williamson, New York City, Anthony J. Marchetta, Newark, N.J., of counsel.

Moses & Singer, New York City, for Asbestos plaintiffs; Robert J. Rosenberg, New York City, of counsel.

Ballon, Stoll & Itzler, New York City, for Liberty Mut. Ins. Co.; Burton Strumpf and Nancy Froude, New York City, of counsel.

Arvey, Hodes, Costello & Burman, Chicago, Ill., for Pittsburgh Corning; John W. Costello, Chicago, Ill., of counsel.

Swartz, Campbell & Detweiler, Philadelphia, Pa., for Pacor, Inc.; Dan Bruch, Philadelphia, Pa., of counsel.

Redmon, Branham & Sarap, Columbus, Ohio, for Ohio plaintiffs; Robert E. Branham, Columbus, Ohio, of counsel.

Debevoise & Liberman, New York City, for Public Service Elec. & Gas and Pacific Gas & Elec.; Martin S. Siegel, New York City, of counsel.

## DECISION ON MOTION FOR SUMMARY JUDGMENT FOR DECLARATORY RELIEF TO EXTEND THE AUTOMATIC STAY TO ENCOMPASS CO–DEFENDANTS

BURTON R. LIFLAND, Bankruptcy Judge.

### I. *Background Facts*

Plaintiffs in this declaratory judgment action are inviting this Court pursuant to its equitable powers to broaden the automatic stay afforded the debtor under 11 U.S.C. 362 to include the non-debtor plaintiffs. Essentially, these plaintiffs request by motion for summary judgment that this Court make a ruling which would be the ultimate determination for all courts across the country as to the indispensable nature of Manville in asbestos litigation pending in various state and federal forums.

The plaintiffs are co-defendants of Johns-Manville, Inc. ("Manville") in approximately 11,000 asbestos-related personal injury and property damage suits to which Manville or any of its affiliates is a party. Plaintiffs herein are GAF Corporation, Keene Corporation, Armstrong World Industries, Inc., H.K. Porter Company, Inc., Pittsburgh Corning Corporation, Garlock, Inc., Eagle-Picher Industries, Inc., The Celotex Corporation and Fiberboard Corporation ("the co-defendants").

Manville is a diversified manufacturing, mining and forest products company conducting its business through five principal operating subsidiaries. It is the world's largest miner, processor, manufacturer and supplier of asbestos and asbestos-containing products. Manville's Chapter 11 filing is unprecedented in that it purports to be a healthy company with a substantial net worth. It contends that its financial difficulties have arisen from its position as defendant or co-defendant in the asbestos litigation brought by more than 15,550 plaintiffs throughout the country. Suits are currently pending in 46 states. Some court systems have more than 2,000 asbestos lawsuits. An average of 425 new asbestos lawsuits per month were brought against Manville pre-petition and it estimates that approximately 32,000 additional suits could be brought against it in the next 27 years.

According to Manville, its current cost for these suits is estimated at approximately $40,000 per case, excluding cases on appeal. Manville has disclosed that since 1981, it has been found liable for punitive damages in several asbestos lawsuits and anticipates additional exemplary damages awards which greatly increase its potential liabili-

ties. According to a study commissioned by Manville, its potential liability in the asbestos litigation will be not less than $2 billion over the next 20 years.

In addition to its litigation with the plaintiffs, Manville is engaged in litigation with its insurance carriers regarding its coverage for the claims asserted against it in the asbestos litigation. *See Johns-Manville Corporation v. The Home Insurance Co.,* No. 765226 (Cal.Sup.Ct., San Francisco County). Manville's insurance carriers have thus far largely disclaimed coverage and refuse to defend or indemnify Manville from its liability in these suits. At issue in the insurance litigation is coverage in excess of $600 million.

## II. *Facts Regarding the Instant Proceeding*

On August 26, 1982, Manville filed a petition within the framework of Chapter 11 of the Bankruptcy Code (the "Code"). Pursuant to Section 362(a) of the Code, the filing of the petition triggered an automatic stay of the commencement or continuation of all proceedings against Manville that had been or could have been commenced prior to the bringing of Manville's Chapter 11 petition. On the same date, this Court entered a restraining order substantially identical to the Section 362 stay.

Seeking to broaden the Manville stay so as to include them, the co-defendants assert that such an order is vital for the orderly liquidation of claims against Manville. They point out that courts throughout the country have reached inconsistent results with respect to the effects of the stay on co-defendants. They further contend that they have unliquidated and contingent claims against Manville for contribution or idemnification relating to the asbestos cases. They argue that a stay order applicable to them is necessary to facilitate the

equitable administration of the Manville estate and to allow all parties to concentrate on a plan of reorganization rather than to apply their resources to duplicative and protracted litigation. They submit that this Chapter 11 case is so extraordinary and the debtors involvement in the subject litigation is so inextricably bound up with the rights and responsibilities of the co-defendants and the class they represent that this Court must exercise its power pursuant to Section 105 of the Code in the interest of facilitating a comprehensive plan of reorganization which will resolve on a global basis this mammoth problem.

In the alternative, the co-defendants seek an order pursuant to Section 362(a) modifying the automatic stay so as to allow the asbestos cases throughout the country to proceed to the point of judgment, staying only the collection or enforcement of any resulting judgment.

The co-defendants argue that this relief would facilitate the resolution and liquidation of claims, relieve this Court of the burden of trying the many asbestos cases now pending throughout the country[1], allow equitable treatment of all Manville's creditors and avoid duplicative litigation.

The Asbestos Committee, appointed pursuant to an order of this Court and acting as a fiduciary for, *inter alia,* claimants who have commenced suits for asbestos-related injuries against Manville, has been permitted to intervene as a defendant. Opposing the request to expand the stay to include the co-defendants, the Asbestos Committee also cross-claims seeking to lift the present Section 362 stay so as to allow the suits against Manville to proceed to judgment.

## III. *Issues Presented*

The issues presented are: (1) whether this Court should take the unprecedented

---

1. In view of the holding of this Court on this motion it is not necessary for purposes of this decision to explore the impact of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 9 B.C.D. 67 (1982) on a bankruptcy court's jurisdiction to try the pending asbes-

tos cases. Furthermore, the authority of this Court to determine the automatic stay issues presented herein is set forth in Rule d(3)(A) of Emergency Bankruptcy Rule I adopted by the U.S. District Court for the Southern District of New York, which rule is the local counterpart of a suggested Rule of the Judicial Conference.

step of exercising its discretion pursuant to Section 105 of the Code to extend the Section 362 automatic stay so as to encompass the co-defendants herein; and (2) whether, in the alternative, the automatic stay may be lifted to allow all actions against Manville to proceed to judgment.

## IV. *Discussion of Law*

Upon examination of the actual wording and legislative history of Sections 362 and 105 and the relevant case law, it is the determination of this court not to extend Manville's Section 362 automatic stay on a global basis so as to prohibit the pursuance of all claims against all co-defendants in every case now pending throughout the country. Rather, the determination of this issue must remain lodged with the court before whom each individual case is pending.

The co-defendants have argued at various times during these proceedings that this court consider their plea that a universal stay will have the effect of creating an atmosphere within the Manville reorganization that could accommodate an industry-wide solution of the entire asbestos health-related problem. They hypothesize a suspension of the enormous litigation nationwide which would facilitate the creation of: a superfund or pool to which they, the insurance industry and Manville would contribute; and, a delivery system to the health claimants. To the extent that the co-defendants purported goal is to join in the creation of an expedient, efficient and fair compensatory delivery system to asbestos victims, their aim is indeed laudable, notwithstanding their self-advancing motivations. The co-defendants assert that extending the stay will shift the focus from asbestos lawsuits and render the asbestos claimants more amenable to cooperate with the debtors and others, including the insurance industry, to achieve a successful reorganization that could include present claimants, as well as future victims who have not as yet manifested symptoms of asbestos-related disease. Indeed, this suspension of the litigation might well serve the purposes urged by the co-defendants.

However, such a pervasive stay, while tempting, is not within this Court's power at this juncture because, as fully discussed *infra,* the scope of Section 362 is narrowly focused on protection of the debtor only. Such a pervasive extension of the stay may not be accomplished by judicial fiat. Thus, I am constrained to declare that so broad an extension of the automatic stay must either be accomplished by legislation or conceivably as part of an eventual reorganization plan.

Moreover, insufficient cause has been shown by the co-defendants to justify lifting the stay to allow all suits to proceed against Manville to judgment.

### A. *The Main Relief Sought*

1. *The Scope of Section 362 of the Bankruptcy Code*

Section 362 of the Code provides in part: (a) Except as provided in subsection (b) of this section, a petition filed under Section 301, 302, or 303 of this title operates as a stay, applicable to all entities of (1) The commencement or continuation, including issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a) (1979).

The language of Section 362 clearly refers only to actions against the debtor and does not relate to any other interparty claims. *See Royal Truck & Trailer v. Armadora Maritima Salvadoreana,* 10 B.R. 488, 490 (N.D.Ill.1981); *In re Related Asbestos Cases,* 23 B.R. 523, 9 B.C.D. 874 (N.D.Cal.1982). A literal interpretation of this language comports with the rationale behind the formulation of an automatic stay in this statutory scheme as described in *Paden v. Union for Experimenting Colleges and Universities,* 7 B.R. 289 (N.D.Ill.1980). In *Padeh,* the Court stated that the automatic stay is designed:

to prevent the dissipation or dimunition of the bankrupt's assets during the pendency of the Chapter XI proceeding . . . and to avoid the multiplicity of claims in different forums against the estate. *Id.* at 290 (describing the reasons for the predecessor to Section 362, Rules of Bankruptcy Procedure 11–44 applied to the 1898 Bankruptcy Act).

Furthermore, the legislative history of Section 362 indicates that the automatic stay protects creditors from the injustice of a race for the *debtor's* assets:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the *debtor's* property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the *debtor's* assets prevents that.

*See* H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 340 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6297. (emphasis added).

The legislative history also notes that Section 362 is designed to protect the debtor:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 54–55 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5840–41.

Notwithstanding this limited focus of Section 362, the co-defendants urge the Court to use its discretionary powers to include them under the penumbra of Section 362's protection. However, although I find their arguments attractive, I do not find their request for such an extension of the automatic stay supportable at law. This holding is formulated against a background of authority denying such relief in bankruptcy cases generally as well as in other courts' decisions in the Manville and United Asbestos and Rubber Co. ("Unarco")[2] bankruptcy cases.

In the oft-cited *Royal Truck* case, 10 B.R. 488 (N.D.Ill.1981), a suit pending against the debtor for breach of lease was stayed when the debtor filed a Chapter 11 petition. In that suit, a co-defendant, who was the guarantor of a lease of equipment to the debtor, had also been sued by plaintiff and had, in turn, filed a counterclaim against the debtor for indemnification. The plaintiff in that litigation, Royal Truck and Trailer, Inc., requested leave of the bankruptcy court to proceed against the co-defendant. The court granted plaintiff's motion and allowed the suits against the co-defendant to continue. However, in so doing, the Court in *Royal Truck* expressly left the door open for this kind of suit in the future and acknowledged that there are instances where a bankruptcy court may properly stay proceedings against non-bankrupt co-defendants. The Court declared: "Something more than the mere fact that one of the parties to the lawsuits has filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against non-bankrupt parties." *Id.* at 491.

The co-defendant guarantor in *Royal Truck* had alleged that the debtor's petition operated to stay all proceedings against it. The court rejected this contention because the legislative history of the statute, the well-settled interpretation of the predecessor Act by cases and commentary and the clear language of Section 362 "makes it quite clear that, in Chapter 11, the protec-

---

**2.** Unarco is a company similarly situated to Manville in that it also was a defendant in a plethora of asbestos lawsuits prior to filing in Chapter 11 earlier this year. The *Unarco* bankruptcy case, Case No. 82 B 9841 through 82 B 9851, is currently pending before the Honorable Edward Toles in the Bankruptcy Court of the Northern District of Illinois.

tions afforded the bankrupt are designed for the debtor-bankrupt only." *Id.* at 490. The court in *Royal Truck* thereby concluded that no convincing justification for extending the stay had been demonstrated in that particular case and therefore maintained the *status quo.*

The court then examined whether the debtor in *Royal Truck* was an indispensable party under Rule 19 of the Federal Rules of Civil Procedure ("FRCP") in whose absence the plaintiff's suit could not proceed. In so doing, the court considered the four interests suggested by Rule 19(b) to be weighed in making its determination whether in equity and good conscience the action should proceed among the parties before it. These interests were: (1) plaintiff's interest in having a forum against co-defendants; (2) the co-defendants' interest in avoiding multiple litigation, inconsistent relief or sole responsibility for a liability it shares with another; (3) the debtor's interest in being adequately represented during the proceedings against the co-defendants; (4) the court and public's interest in complete, consistent and efficient settlement of controversies. *Id.* at 492. (citing *Provident Tradesman Bank v. Patterson,* 390 U.S. 102, 109–10, 88 S.Ct. 733, 737–38, 19 L.Ed.2d 936 (1968)).

The only interest which militated against proceeding with the case against co-defendants in *Royal Truck* was the risk of incurring multiple or inconsistent obligations. However, since the co-debtor in *Royal Truck* was a joint obligor and thus primarily liable, it could have been sued as the only defendant. Thus, the co-defendants' request to be able to pursue their claim against the debtors in one proceeding was deemed by the court to be desirable, although not essential to a resolution of the action.

The court in *Royal Truck* recognized plaintiff's interest in having a forum, and noted that plaintiff did not necessarily have an alternative forum available to press its claims against the co-debtor. Therefore, the court granted plaintiff's motion to proceed against the co-debtor because it did not perceive a great risk of inconsistent judgments nor an adverse effect upon the debtor by proceeding without it.

The court went on to compare the specificity with which Chapter 13 of the Code was drafted relative to that of Chapter 11. Chapter 13, in contrast to Chapter 11, specifically allows for the stay of an action against a co-debtor:

> Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless (1) such individual became liable on or secured such debt in the ordinary course of such individual's business.... 11 U.S.C. § 1301(a).

The implication is clear: Unless specifically called for in the Code, the automatic stay applies only to the debtor.

Other cases are in accord with the result in *Royal Truck.* In *In re Aboussie Brothers Construction Co.,* 8 B.R. 302 (E.D.Mo.1981), a partnership filed a Chapter 11 petition. The district court affirmed the bankruptcy court's refusal to enjoin the plaintiff from continuing its state court action against the individual partners of the debtor partnership. The adverse effect on the debtor of impairment of the partner's ability to contribute funds to the reorganization was deemed insufficient justification for the issuance of the injunction.

Similarly, in *General Motors Acceptance Corp. v. Yates Motor Co.,* 159 Ga.App. 215, 283 S.E.2d 74 (1981), plaintiff Yates Motor Co. transferred title and possession of three trucks to the debtor in return for a check in the amount of $19,860.19. The debtor's check was dishonored due to insufficient funds. The debtor subsequently transferred the trucks to General Motors Acceptance Corp. ("GMAC"). On January 16, 1980, Yates filed a complaint in Georgia state court against, *inter alia,* the debtor and GMAC alleging conversion. On January 21, 1980, the debtor filed a petition in

bankruptcy. On October 15, 1980 a default judgment was entered against GMAC.

On appeal, GMAC contended that the trial court erred in entering the default as the proceedings were stayed against it as a co-defendant of the debtor. The court refused to extend the scope of the stay because the allegations against the debtor and GMAC were not so "inextricably interwoven" that the Section 362 stay applied to GMAC merely because it was a co-defendant of the debtor. *See also In re Casgul,* 22 B.R. 65 (Bkrtcy.App., 9th Cir.1982) (automatic stay applies only for the benefit of the debtor and relief from it cannot be conditioned on forebearance from proceeding against officers or directors of the debtor corporation); *In re The Bank Center Ltd.,* 15 B.R. 64 (Bkrtcy.D.Pa.1981) (action permitted against general partners of bankrupt partnership to confirm adverse judgment on arbitration award); *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bkrtcy.E.D.N.Y. 1980) (suit against guarantors of a loan who were also co-defendants of the debtor is not stayed); *In re Cloud Nine,* 3 B.R. 202 (Bkrtcy.D.N.M.1980) (creditors permitted to continue state court action against co-debtors).

Courts across the country have been faced with the dilemma of whether to proceed in asbestos litigation in the absence of a co-defendant which has filed for Chapter 11. These courts have reached differing conclusions depending upon the individual facts in each case. Some courts have allowed the actions to continue against co-defendants in the absence of Manville or Unarco. *See, e.g., In re Massachusetts Asbestos Cases* M.B.L. Nos. 1 & 2 (D.Mass. Sept. 28, 1982) (the legislative history of section 362 and the case law decided thereunder makes it abundantly clear that the automatic stay operates only against the debtor

seeking protection) and *In re Related Asbestos Cases,* 23 B.R. 523, 9 B.C.D. 874 (N.D.Cal.1982), where the court held that Section 362 does not apply to claims against non-bankrupt co-defendants. In this California case, Chief Judge Peckham ordered the severance of the claims against Manville and Unarco and allowed the cases against the co-defendants to continue. He held that FRCP Rule 19 is no impediment to the continuation of these suits because joint tortfeasors are not indispensable parties. *See also Lynch v. Johns-Manville Sales Corp.,* 23 B.R. 750, 7 C.B.C.2d 342 (S.D.Ohio 1982) (Section 362(a) does not stay litigation against solvent co-defendants of a Chapter 11 debtor and Unarco and Johns-Manville are neither necessary nor indispensable parties as defined in Rule 19 FRCP because the co-defendants' interest in avoiding multiple litigation did not outweigh plaintiff's interest in having a forum); *In re Asbestos Related Cases* No. B1–CP–1 (E.D.N.C. September 13, 1982) (The bankruptcy filings of Unarco and Johns-Manville do not automatically stay the suits as to the remaining co-defendants); *Kindle v. Fiberboard Corporation,* No. TY 79–35–CA (E.D.Tex. August 12, 1982), *petition for writ of mandamus denied,* No. 82–2339 (5th Cir. Aug. 20, 1982).

The courts in the above-cited cases have followed the rationale of *Royal Truck* and have relied on the plain language of Section 362(a) which acts as a stay of actions against the debtor only. These courts also note that the legislative history supports this construction and rely on the comparison between the specific statutory provision for extension of the stay to co-debtors in Chapter 13 and the absence of any counterpart to it in Chapter 11. *See, e.g. Kindle, supra; In re Related Asbestos Cases, supra.*[3]

---

**3.** It is true, as the co-defendants indicate, that some courts have stayed the actions as to all defendants *until further order of the court.* For example, in *Brandenburg v. Johns-Manville Sales Corporation, et al.,* Civil Action No. 81–1832 (D.D.C. September 14, 1982) (attached to co-defendants Reply Memorandum of Law as Exhibit A), the court was persuaded that the

case was to be tried as a whole because under the facts in that particular case, the court found that "the common issues of law and fact, and the considerations herein make it important, if not necessary, to try this case as an entity and that any delay prejudicing plaintiff is outweighed by those considerations." Slip op. at 3.

Co-defendants cite two cases to bolster their position that the Section 362(a) stay operates to stay actions against all parties where a co-defendant has filed a bankruptcy petition. These two cases, however, are as inapposite as the asbestos cases cited above. First, co-defendants cite *Federal Life Insurance Co. (Mutual) v. First Financial Group of Texas, Inc.,* 3 B.R. 375 (S.D. Texas 1980). In *Federal Life,* the district judge refused to permit a plaintiff to sever its claim against a corporate debtor and proceed against the individual co-defendants, one of whom was a corporate officer of the debtor. The court appears to have rested its decision on its broad discretionary powers under FRCP 42(b) to permit or deny severance of actions in light of considerations of justice and efficiency.

It is significant that the ruling in *Federal Life* was made by a trial judge in a non-bankruptcy forum whose decision was based upon the particular facts before him rather than upon general principles. The court in *Federal Life* found that the allegations against the debtor and its officers were "inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding," *id.* at 376, and "arise from the same factual and legal basis." *id.* at 377. In contrast, in the instant case no such inextricable intertwining has been proven as to each and every individual case by the co-defendants. This is because the only relationship demonstrated between the co-defendants is that of joint tortfeasors. Each co-defendant is an entirely independent entity, quite unlike each officer of a debtor corporation.[4]

The co-defendants also rely on *In re White Motor Credit Corp.,* 11 B.R. 294 (Bkrtcy.N.D. Ohio 1981), *rev'd on other grounds,* 23 B.R. 276 (N.D.Ohio 1982), in which the bankruptcy court stated:

> All of the products liability suits have been effectively stayed by operation of Section 362 of the Code . . . the stay operates as a windfall benefit to co-defendants and insurance companies who, along with the debtor, enjoy many of the benefits of the moratorium. Nevertheless, for many reasons (perhaps including section 362 itself), products liability plaintiffs cannot dismiss a reorganization debtor and proceed against co-defendants only. 11 B.R. at 295.

These comments, however, are dicta. The scope of the automatic stay was *not* an issue in *White Motor.* Rather, *White Motor* involved the statutory authority of a bankruptcy judge to appoint a special master. Moreover, the cases relied upon by the bankruptcy judge to support his interpretation of the stay, *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) and *Potts v. Potts,* 142 F.2d 883 (6th Cir.

---

Also, in *Wedgeworth, et al v. Fiberboard Corp., et al,* IV No. 80–203–B (M.D.La. September 28, 1982) (attached to co-defendant's reply memorandum as Exhibit B), the court stayed the proceedings as to all the parties and refused the plaintiff's request for severance. However, the court did not base its decision on the automatic stay. Rather, it relied on the general discretionary power of a district court to stay proceedings before it in control of its docket and in the interests of justice. *See* slip op. at 5–6 citing *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1939) and *Hines v. D'Artois,* 531 F.2d 726, 733 (5th Cir. 1976). The *Wedgeworth* court was persuaded to exercise its discretion to stay the proceedings by its finding of the significant possibility of later actions against Johns-Manville and Unarco by plaintiffs as well as crossclaiming co-defendants, which actions would involve a great duplication of efforts. Also, the trial court found it doubtful whether the jury could fairly apportion liability in the absence of Johns-Manville and Unarco. Moreover, in *Wedgeworth,* the trial court found that Johns-Manville had, in fact, taken the lead in the defense of that particular action and that, therefore, its absence would seriously impede the defense efforts of all the co-defendants. In the instances where trial courts have prohibited suits from going forward without Manville or Unarco, there were either specific trial court findings of indispensability or the stay was ordered separate and apart from Section 362. Accordingly, these asbestos cases cited by the co-defendants do not support the instant application for a broad and blanket extension of the automatic stay to cover all co-defendants in all suits on a global basis.

4. It should be noted that in an unreported decision, the bankruptcy court subsequently lifted the stay as to co-defendants and the district court thereafter proceeded with the litigation.

1944), *cert. denied,* 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945), did not involve the issue of the effect of the stay on co-defendants.[5]

■ In light of the clear language and legislative history of Section 362(a), the promulgation of a specific provision to stay proceedings against co-defendants of Chapter 13 debtors and case law interpretation, this court holds that Section 362 is limited in scope to the debtor and does not operate to stay actions against the co-defendants of this debtor.

■ Moreover, it cannot be held that as a matter of law Manville is an indispensable party to the asbestos litigation. Under federal law, joint tortfeasors are not considered indispensable parties. *Field v. Volkswagenwerk A.G.,* 626 F.2d 293, 298 n. 7 (3d Cir.1980); *Herpich v. Wallace,* 430 F.2d 792, 817 (5th Cir.1970); *Windert Watch Co., Inc. v. Remex Electronics, Ltd.,* 468 F.Supp. 1242, 1246 (S.D.N.Y.1979), 7 Wright & Miller, *Federal Practice and Procedure* § 1623 at 241–42 (1973 & Supp. 1981).

■ Further, a universal finding that Manville is an indispensable party to all the thousands of cases in which it is currently a defendant is not possible on the facts before the court today. This is because the essential inquiry in determining indispensability has been articulated as follows:

There are two essential tests of an indispensable party: (1) can relief be afforded the plaintiff without the presence of the other party? (2) can the case be decided on its merits without prejudicing the rights of the other party? *Pickett v. Paine,* 199 S.E.2d 223 at 230, 230 Ga. 786 (1973).

An indispensable party is one who must be joined because his non-joinder is so prejudicial, both to his rights and to those of the parties already joined, that action cannot continue without him. *Jones Knitting Corp. v. A.M. Pullen & Co.,* 50 F.R.D. 311, 314 (S.D.N.Y.1970).

■ Accordingly, the determination of indispensability must be made on a case-by-case basis by the courts across the country where the asbestos litigation is pending. The facts of a particular case may render Manville an indispensable party. For example, if Manville supplied the major portion of asbestos products in a particular location it could be held to be unfair to proceed in Manville's absence. That the indispensability is best determined on a case-by-case basis is illustrated by the divergent results reached by courts in applying a FRCP Rule 19 analysis. It would be most inappropriate for this court, without detailed knowledge of the specific factual contexts, to issue a sweeping ruling on Manville's indispensability. This ruling is properly lodged with each individual trial court. This holding should not be construed to preclude consideration of stay extension to non-debtor parties in a narrower setting where something more than the filing of a bankruptcy petition by a party is shown. *See Royal Truck, supra.*

2. *Scope of Section 105 of the Bankruptcy Code Where No Statutory Basis Exists for the Grant of Stay Relief*

■ Notwithstanding the limited focus of Section 362, the co-defendants propose that the Court use its powers under Section 105 of the Code so as to provide them with injunctive relief unavailable to them under Section 362. The issue thereby presented is whether the All Writs Statute embodied in Section 105 can be used where no statutory basis exists to grant stay relief. Although Section 105 may be used to extend the stay, Section 105 does not have a life of its own and this extension may only be accom-

---

**5.** The district court subsequently vacated the bankruptcy court's order appointing a special master without commenting on the bankruptcy courts dicta regarding the scope of the automatic stay. *See In re White Motor Corp.,* 24 B.R. 200, 7 C.B.C.2d 362 (N.D.Ohio 1982). Most recently, the Sixth Circuit has stayed the district court ruling and reinstated the bankruptcy court's order appointing a special master also without commenting on the dicta regarding the scope of the automatic stay. *See In re White Motor Credit Corp.,* No. 82–3638, Order by the Sixth Circuit dated November 15, 1982.

plished within the proper boundaries of Section 362. That is, unless this extension is designed to protect the debtor's interests, it cannot be granted.

Section 105(a) of the Bankruptcy Code provides:

The bankruptcy court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

■ Section 105 of the Code was not intended to grant the bankruptcy court powers without bounds, *In re Brada Miller Freight Systems, Inc.*, 16 B.R. 1002, 6 C.B. C.2d 375, 389 (N.D.Ala.1981), and the court's equitable powers thereunder are not unrestricted. *In re Dunckle Associates, Inc.*, 19 B.R. 481, 6 C.B.C.2d 600, 605 (Bkrtcy.E.D. Pa.1982). *See also* 2 Collier on Bankruptcy ¶ 105.02 at 105–7 (15th ed. 1982). *See also In re Chanticleer Associates, Ltd.*, 592 F.2d 70 (2d Cir.1979).

The crux of the matter before this Court is whether the injunctive relief sought by the co-defendants under Section 105(a) is "necessary or appropriate" in order to achieve the goals of a Chapter 11 reorganization. *See In re Landmark Air Fund II*, 19 B.R. 556, 559 (Bkrtcy.N.D.Ohio 1982). A request for an injunction pending confirmation of the debtor's plans, such as the one requested by the co-defendants, is deemed a request for a preliminary injunction. *See In re Larmar Estates, Inc., supra.*

As articulated by the Colliers treatise:

Bankruptcy Rule 765 generally incorporates Rule 65 of the Federal Rules of Civil Procedure so that it is necessary to comply with Federal Rule 65 when seeking injunctive relief. . . . While the power may be broad under Section 105, the courts should be careful not abuse it. Section 105 is not without limits. It does not permit the court to ignore, supersede, suspend or even misconstrue the statute itself or the rules. The bankruptcy courts should exercise great care in this regard. 2 *Collier on Bankruptcy* ¶ 105.02 (15th ed. 1982).

■ Therefore, a party seeking the equitable relief of an extension of the stay must satisfy the requirements of FRCP 65 as applied to bankruptcy by Rule 765 of the Rules of Bankruptcy Procedure. The co-defendants here must show that without the sought-after relief, they will suffer irreparable injury and that they are likely to prevail on the merits. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); *In re Otero Mills, Inc.*, 21 B.R. 777 at 778–779 (Bkrtcy. D.N.M.1982). As explained by a leading authority:

[T]he . . . court may, in the exercise of its discretion, properly grant an interlocutory injunction when it is satisfied that there is a probable right and a probable danger and that the right may be defeated, unless the injunction is issued; and that the plaintiff is in substantial need of protection; and that the damage to him, if the injunction is denied, *plainly outweighs any foreseeable harm to the defendant.* 7 (Pt. 2) Moore's Federal Practice ¶ 65.04[1] at 65–39 (2d ed. 1982). (emphasis added).

These requirements, particularly the balance of hardship in favor of the moving party, have been specifically adopted and enforced by the Second Circuit. The court in *Sanders v. Airline Pilots Association, International*, 473 F.2d 244 (2d Cir.1972), articulated this stringent standard, stating:

The requirement that a party seeking a preliminary injunction demonstrate that it will suffer irreparable harm in the absence of preliminary relief necessitates more than a mere showing that the party seeking relief will see its relative position deteriorate. Preliminary injunctive relief is extraordinary relief. It requires a convincing demonstration that the balance of hardships tips decidedly toward the moving party. *Id.* at 248.

The co-defendants argue that they will suffer irreparable injury if Section 105(a) of the Code is not employed by this Court to expand the stay afforded the debtor by virtue of Section 362 to encompass co-defendants. It therefore follows, they argue,

that because the co-defendants will suffer irreparable injury without the presence of Manville, Manville is an indispensable party to all of the litigation pending throughout the nation.

The co-defendants indicate a number of specific examples of the injuries they claim they will suffer without injunctive relief. First, they allege that there will be a multiplicity of actions resulting in an increased risk of inconsistent verdicts and a great increase in litigation costs to the co-defendants. Second, they claim that the asbestos lawsuits contain issues of comparative negligence, apportionment among joint tortfeasors, and primary and secondary liability with respect to sellers of asbestos products and suppliers of raw asbestos itself. They argue that without Manville as a party to the litigation, each defendant will not be able fairly to determine its share of liability. Third, the co-defendants contend that their ability to obtain discovery and production of documents from Manville has been severely impaired by Manville's filing. Fourth, they argue that long-established co-ordinated defense efforts between Manville and the co-defendants will be devastated if the relief sought is not granted. Finally, the co-defendants point out that Manville is currently in litigation with a number of insurance companies regarding questions of insurance coverage of asbestos-related claims. *See e.g., Johns-Manville Corp. v. Home Insurance Company,* No. 765226 (Calif.Sup.Ct., San Francisco County). The co-defendants urge that should it be established that Manville is covered by insurance for some or all of the asbestos claims, then Manville's defense of these cases in the courts in which they arose would be able to go forward without a substantial detrimental effect on property of the estate.

The co-defendants rely upon *In re Otero Mills, Inc.,* 21 B.R. 777, in their attempt to employ Section 105 to enjoin actions not directly covered by Section 362. In *Otero,* the debtor had executed a number of promissory notes which were guaranteed by its

president. The holder of the notes brought suit against the president of the corporation to collect on the notes. The debtor argued that irreparable harm would result if the foreclosure were allowed because the property subject to the foreclosure was property which the president planned to sell with the intention that the proceeds be contributed to the debtor for the payment of corporate debts. The court agreed and extended the stay to encompass the debtor's president.

While it is true that in *Otero* a creditor was stayed from continuing an action against a non-debtor party, the case does not support the ubiquitous relief sought by the co-defendants. *Otero* sets forth the following standards for a court to employ in deciding whether to prohibit the continuance of a suit against a non-debtor party:

> The power to enjoin extends to some cases of a creditor's action against a co-debtor or guarantor, but only in limited circumstances. To so enjoin a creditor's actions against a third party, the court must find that failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through that third party.... This power to enjoin assures that a creditor may not do indirectly that which he is forbidden to do directly. Accordingly, 11 U.S.C. § 105 permits this Court to enjoin a creditor's action against a third party co-debtor or guarantor when the proper showing is made by the party requesting the injunction.... [Therefore, to obtain such a stay] the debtor must show:
>
> 1. Irreparable harm to the bankruptcy estate if the injunction does not issue;
>
> 2. Strong likelihood of success on the merits; and
>
> 3. No harm or minimal harm to the other party or parties.

*Otero,* 21 B.R. at 778–779 (citations omitted).

While these standard were met in *Otero,* it is abundantly clear that the first require-

ment cannot be met in the instant case. That Manville is basically indifferent to the co-defendants' requested relief is suggestive of a perception of a lack of irreparable harm to the debtor's estate if the injunction does not issue. Failure to extend the stay herein would not adversely or detrimentally influence or pressure Manville through the co-defendants. This is because the interests of Manville and the co-defendants at the individual trial level are not so interwoven as to create that undue influence. Thus, at least conceptually, a creditor does not impact Manville indirectly by proceeding against the co-defendants.

In addition, the co-defendants have made no showing with regard to the second requirement. Moreover, the third requirement cannot be met. The asbestos victims will certainly suffer by the total frustration of their opportunity for a day in court. As Chief Judge Peckham stated in the context of asbestos litigation:

> Such delay is not costless to these plaintiffs, many of whom are suffering financial hardships and who seek damages to redress their injuries and some of whom are dying and whose testimony must be perpetuated. The defendants may be inconvenienced by expeditious resumption of the actions against them. However, under *Landis,* the balance of hardship weighs in favor of the injured plaintiffs.

*In re Related Asbestos Cases,* 23 B.R. 523, 531–2 (N.D.Cal.1982) (citing *Landis v. North American Company,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). *Accord, Evans v. Johns-Manville Sales Corp.,* C.A. No. 80–2939, slip op. at 4–6 (D.N.J., October 5, 1982).

To the same effect, *see In re Massachusettes Asbestos Cases,* M.B.L. Nos. 1 & 2 (D.Mass. Sept. 28, 1982), in which the court denied a stay against third parties who were co-defendants of a debtor, stating:

> The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else....

> Here, it is not a question of a fair possibility. It is certainty that any delay in the continuing efforts to bring these cases to trial will result in continued and increased hardship to the plaintiffs. This is not to ignore the problems of the defendants, but the loss to the plaintiffs far outweighs any possible gain procedural or practical that would inure to them.

Slip Op. at 3.

In another case where a bankruptcy court applied the stringent requirements for injunctive relief in this Circuit, relief was denied. In *In re Larmar, supra,* the bankruptcy court refused to exercise its injunctive powers under Section 105 because the party seeking relief had failed to make the necessary showing of irreparable harm. In *Larmar,* the Federal Deposit Insurance Corporation ("the FDIC") had commenced an action in state court prior to the Chapter 11 filing against the debtor and its guarantors and had obtained summary judgment on this action one day before the filing. Thereafter, the FDIC sought and obtained an order allowing it to enforce its state court judgment against the individual guarantors.

In granting the request to allow the action to go forward against co-defendants, the court articulated the stringent requirements which had not been satisfied by the co-defendants, stating:

> The guarantors have not convinced this court that the balance of hardships tips decidedly toward the party seeking the injunction. *Sanders, supra* at 248. In addition, the guarantors have not shown how restraining the FDIC from going after them, is "necessary and [sic] appropriate" to carry out the provisions of Title 11. The guarantors have the burden of showing that the failure to stay the FDIC, would adversely affect the debtors' chances for successful reorganizations: They have failed to meet this burden. Accordingly, the court will not restrain the FDIC from enforcing the state

court judgment against the guarantors. *Larmar,* 5 B.R. at 331–332.

■ Similarly, the co-defendants here have not satisfied their burden to demonstrate that the balance of hardships tips decidedly toward them and that they will suffer irreparable harm if the stay is not extended.

In sum, Section 105 of the Code cannot operate here to expand the scope of Section 362. Because Section 105 can only be used to allow a court to issue all "necessary or appropriate" orders to carry out the provisions of Title 11, it cannot be used to carry out an order in contravention of the narrow focus of Section 362. In an appropriate case, where the proposed extension of the stay is designed to cover actions against entities that truly are inextricably interwoven with the debtor or which affect property of the debtor's estate, Section 105 may be used. In the instant case, such is not the situation as any liability of these co-defendants is not directly attributable to the debtor as it would be if these co-defendants were, for example, key employees of the debtor. In order for these key employees to be covered by the stay, it would have to be shown that they are prevented from carrying out their reorganization duties of

plan formulation because of participation in the litigation. Co-defendants have not met their burden of proof in satisfying the injunctive relief standards for extending the stay by means of Section 105 of the Code.[6]

### B. *The Alternative Relief Sought*

■ In the alternative, the co-defendants move this court to lift the automatic stay afforded Manville under Section 362 so as to allow the asbestos victims' lawsuits against Manville to continue to the point of judgment.

Section 362(d) of the Code provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, . . .

The legislative history of Section 362(d) of the Code details what constitutes sufficient "cause" to modify the stay. It provides:

. . . causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding in-

---

**6.** The denial of the co-defendants' principal prayer for relief is intended to govern the outcome in two Manville actions brought individually and separate and apart from the instant matter to determine the extent of the stay with regard to co-defendants.

One of these actions is brought by several Ohio plaintiff creditors by and through their attorney, Robert E. Branham, regarding the following pending actions:

*Bowman, et al v. Armstrong World Industries, et al,* C–2–81–1492;
*Mary E. Braumann, et al v. Armstrong World Industries, et al,* C–2–82–312;
*Ronald L. Tatman, et al v. Armstrong World Industries, et al,* C–2–82–359;
*David Frank Young, et al v. Ottawa Silica, et al,* C–2–82–523;
*Bernice Benadum v. Armstrong World Industries, et al,* 82–DV–03–1779

Pursuant to this Court's decision herein, these Ohio plaintiffs may proceed against the above-enumerated non-debtor co-defendants.

The other case, *Zenzen v. Johns-Manville, Adversary Proceeding No. 82–6420A,* relates to an action entitled *"Mr. and Mrs. David Zenzen, Individually, a/n/f of Ryan Zenzen and Robin Zenzen, Minors v. Today Housing, et al",* 81–09928 currently pending in Harris County, Texas. The *Zenzen* family seeks an order from this court that will permit the continuation and completion of a state court trial against all defendants except Manville Forest Products Corp., which corporation plaintiffs never sued directly. Manville Forest Products Corp. is a third party defendant in this state court action. At a hearing held on December 16, 1982, this Court ruled that the Zenzen family cannot proceed against Manville. As to whether the Zenzens may proceed against all other co-defendants, this Court reserved decision pending the outcome in the instant proceeding.

Pursuant to my decision herein, it is hereby ordered that the Zenzens may proceed against all defendants except Manville Forest Products Company in the state court action currently pending in Harris County, Texas.

volving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is an executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving post-petition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances. House Report No. 95–595, 95th Cong., 1st Sess. 343–344 (1977), U.S.Code Cong. & Admin.News 1978, p. 6300.

Based on the evidence before this court, it is clear that just cause does not exist for lifting the automatic stay provision of Section 362 as it applies to Manville. There can be no doubt that the forced participation of a presently uninsured Manville in thousands of lawsuits would represent a tremendous burden on the estate. Because lifting the stay would have the negative effect of vitiating Manville's breathing spell and frustrating Manville's attempts at formulating a reorganization plan, the requested relief would detract from the goals of a Chapter 11 reorganization and must be denied.

It should be noted that in those cases where relief from the automatic stay was granted, the facts were in no way similar to those facts before this Court. More importantly, in these other cases, a denial of the request to lift the stay would have involved duplicative and wasteful relitigation of issues previously decided. The granting of the motion to lift the stay in these cases also represented no significant drain on estate assets.

For example, in *In re McGraw,* 18 B.R. 140 (Bkrtcy.W.D.Wisc.1982), the court granted relief from the stay of a creditor's single negligence action against the debtor and the debtor's former employer where the creditor agreed to seek enforcement of any judgment award only from the debtor's former employer under the doctrine of *respondeat superior.* The court pointed to the fact that the creditors would have had no remedy if the stay were not lifted and that the only cost to be incurred by the debtor would be the legal fees of a single civil suit. *See also In re Philadelphia Athletic Club,* 9 B.R. 280 (Bkrtcy.E.D.Pa.1981), where the court allowed a single litigation to proceed in a state court because, among other reasons, the trial had been almost completed.

On the contrary, to grant the relief sought in the instant case will represent an overly burdensome drain on the estate as well as a frustration of the basic intent of Chapter 11 relief. Accordingly, this court denies the alternative relief sought by the co-defendants because they have not met their burden of demonstrating cause for lifting the automatic stay pursuant to Section 362(d).

## V. *Conclusion*

Based upon the foregoing, this court, although it recognizes the co-defendants plight, finds no basis to extend the Section 362 stay to cover them by means of Section 105. In addition, for the reasons set forth hereinabove, this court will not lift or modify the Section 362 stay en masse to allow all suits against the debtor to proceed to judgment.

IT IS SO ORDERED.